**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**
**2022 MSPB 34**

Docket No. DC-0752-15-0431-I-1

**Calvin Chin,**

**Appellant,**

**v.**

**Department of Defense,**

**Agency.**

October 7, 2022

<u>Paul Y. Kiyonaga</u>, Washington, D.C., for the appellant.

<u>J. Michael Sawyers</u>, Fort Belvoir, Virginia, for the agency.

**BEFORE**

Cathy A. Harris, Vice Chairman
Raymond A. Limon, Member
Tristan L. Leavitt, Member
Member Leavitt issues a separate dissenting opinion.

**<u>OPINION AND ORDER</u>**

¶1 The appellant has filed a petition for review of the initial decision, which sustained the larceny charge, affirmed the agency's removal action, and found that the appellant did not prove his affirmative defenses. For the reasons set forth below, we GRANT the petition for review. We MODIFY the initial decision to find that the appellant is disabled, but we agree with the administrative judge that he did not prove this affirmative defense. We FURTHER MODIFY the initial decision to mitigate the removal action to a 90-day suspension.

## BACKGROUND

¶2    Effective January 25, 2015, the agency removed the appellant from his GS-14 Security Specialist position with the Security and Counterintelligence Office of the Defense Threat Reduction Agency (DTRA) at Fort Belvoir, Virginia, based on a charge of larceny. Initial Appeal File (IAF), Tab 6 at 15-18, 25. The charge stems from the appellant's actions on June 23, 2014. *Id.* at 25-27, 32-35. In relevant part, the appellant went to the Defense Logistics Agency (DLA) cafeteria at Fort Belvoir, Virginia, put some food from the cafeteria's self-serve breakfast buffet in a container, paid for the food, and put the container in a bag. *Id.* at 33. The appellant then returned to the breakfast buffet, removed the container from the bag, put more food in the container, returned the container to the bag, and left the cafeteria without paying for the additional food, which was valued at $5.00. *Id.* at 33, 37. These actions were captured on videotape by surveillance cameras in the cafeteria. IAF, Tab 7.

¶3    A cafeteria employee who witnessed the incident reported it to her supervisor, IAF, Tab 6 at 40, and the matter was ultimately referred to DTRA's Office of Inspector General (OIG) for investigation, *id.* at 32. OIG investigators interviewed the appellant and the cafeteria employee, reviewed the video surveillance footage, and concluded that the appellant knowingly took food from the cafeteria without rendering payment. *Id.* at 34.

¶4    The agency then proposed the appellant's removal based on a charge of larceny in violation of 18 U.S.C. § 661, which makes it unlawful to take and carry away the personal property of another with the intent to steal. *Id.* at 26-27. After considering the appellant's oral and written responses to the proposed removal, *id.* at 15, the deciding official sustained the charge[1] and imposed the removal penalty, IAF, Tab 6 at 15-18.

---

[1] The notice of proposed removal charged the appellant with violating 18 U.S.C. § 661, which pertains to private property. IAF, Tab 6 at 26. However, the decision letter

¶5         The appellant filed a Board appeal in which he denied the charge and asserted, among other things, that his failure to pay for his second helping of food was inadvertent and occurred as a result of his medical condition.  IAF, Tab 1, Tab 14 at 6.  Specifically, the appellant, who has type 2 diabetes, stated that he urgently needed to eat because his blood sugar level was low, and that his fixation on eating caused him to lose focus on paying for the additional food.  IAF, Tab 14 at 5-6.  He also raised affirmative defenses of race and disability discrimination, harmful procedural error, and violations of his due process rights and the statutory provisions found at 5 U.S.C. §§ 2302(b)(10) and (12).[2]  IAF, Tab 1 at 7, Tab 20 at 2.  He further asserted that the agency did not properly consider mitigating factors in deciding to remove him.  IAF, Tab 1 at 7.

¶6         Following a hearing, the administrative judge issued an initial decision that affirmed the appellant's removal.  IAF, Tab 25, Initial Decision (ID) at 1, 40.  The administrative judge found that the agency proved the charge by preponderant evidence, the appellant did not prove any of his affirmative defenses, and the agency established a nexus between the appellant's misconduct and the efficiency of the service.  ID at 3-34.  The administrative judge also found that the agency properly considered the relevant factors in deciding to

identified the charge as a violation of 18 U.S.C. § 641, which prohibits the theft of public property.  *Id.* at 15.  It is undisputed that the food sold in the DLA cafeteria is owned by Sodexho, a private company that provides food services to the cafeteria.  IAF, Tab 13 at 28; Hearing Transcript, Day 1 at 46 (testimony of Sodexho's general manager).  For the reasons discussed herein, *infra* ¶¶ 17-19, this discrepancy does not change our analysis of this appeal.

[2] The provision at 5 U.S.C. § 2302(b)(10) makes it a prohibited personnel practice for an agency to "discriminate for or against any employee or applicant for employment on the basis of conduct which does not adversely affect the performance of the employee or applicant or the performance of others[.]"  The provision at subsection 2302(b)(12) makes it a prohibited personnel practice for an agency to "take or fail to take any other personnel action if the taking of or failure to take such action violates any law, rule, or regulation implementing, or directly concerning, the merit system principles contained in subsection 2301 of [Title 5][.]"

remove the appellant and that the penalty of removal was reasonable. ID at 34-39.

¶7   The appellant has filed a petition for review and a motion to add evidence in support of the petition. Petition for Review (PFR) File, Tabs 3-4. The agency has responded to the petition and the motion. PFR File, Tabs 6-7. The appellant has replied to the agency's responses. PFR File, Tabs 10-11.

## ANALYSIS

We deny the appellant's motion to add evidence in support of his petition for review.

¶8   The appellant seeks to submit as evidence a report summarizing the results of a polygraph examination that he took after the initial decision was issued. PFR File, Tab 4. Under 5 C.F.R. § 1201.115(d), the Board normally will not consider evidence submitted for the first time with the petition for review absent a showing that it was unavailable before the record was closed despite the party's due diligence. *Avansino v. U.S. Postal Service*, 3 M.S.P.R. 211, 214 (1980).

¶9   The record closed below on July 30, 2015, the initial decision was issued on May 13, 2016, and the appellant submitted to the polygraph examination on July 11, 2016. Hearing Transcript, Day 2 (HT 2) at 204-05 (statement of the administrative judge); ID at 1; PFR File, Tab 4. The appellant claims on review that the report could not have been obtained with due diligence before the record closed because the initial decision was the first indication that his testimony had been perceived as "not credible." PFR File, Tab 4 at 7.

¶10   This argument is unpersuasive. The appellant should have known that his credibility would be a key issue in this appeal, particularly because his defense to the charge is that he did not intend to steal the food. IAF, Tab 14 at 6. The appellant apparently believed that the administrative judge would credit his testimony that he did not intend to steal and discovered that he was mistaken when he received the initial decision. However, the Board has held that a party may not correct such an error of judgment after the fact. *Mojica-Otero v.*

*Department of the Treasury*, [30 M.S.P.R. 46](), 48-49 (1986). Because we find that the appellant did not exercise due diligence in submitting to a polygraph examination and providing the results to the administrative judge before the record closed, we deny his motion.

<u>The administrative judge correctly found that the agency proved the larceny charge.</u>

¶11      On review, the appellant argues that the administrative judge did not adequately consider evidence and hearing testimony indicating that his failure to pay for his second helping of food was inadvertent. PFR File, Tab 3 at 12-14. For example, the appellant argues that the administrative judge discounted his physician's testimony that the appellant's urgent need to eat due to his low blood sugar would have momentarily distracted him from paying for his second helping of food. *Id.* at 12-13; Hearing Transcript, Day 1 (HT 1) at 170-72 (testimony of the appellant's physician). This argument is unavailing. The administrative judge thoroughly discussed the physician's testimony in the initial decision. ID at 6-7, 14-15. The Board will not reconsider the factual findings of an administrative judge based on an allegation that the administrative judge failed to give sufficient weight to the evidence introduced on behalf of one party and gave too much credence to the evidence submitted by the other. *Meier v. Department of the Interior*, [3 M.S.P.R. 247](), 256 (1980).

¶12      We similarly find unavailing the appellant's contention that the administrative judge failed to consider letters from two Federal officials attesting to the appellant's trustworthiness or the fact that he was under police surveillance for about 3 weeks after the incident and he did not commit any similar misconduct. PFR File, Tab 3 at 13-14; HT 1 at 235, 283-87 (testimony of the proposing official); IAF, Tab 22 at 1, 5. The appellant asserts that this evidence demonstrates that his conduct on June 23, 2014, was out of character and, thus, inadvertent. PFR File, Tab 3 at 14. Although the administrative judge did not discuss this evidence in the initial decision, it is well settled that an

administrative judge's failure to mention all of the evidence of record does not mean that she did not consider it in reaching her decision. *Marques v. Department of Health & Human Services*, 22 M.S.P.R. 129, 132 (1984), *aff'd*, 776 F.2d 1062 (Fed. Cir. 1985) (Table). Thus, the appellant's argument provides no basis for disturbing the initial decision.

¶13    In concluding that the agency proved the charge, the administrative judge reviewed the record evidence, summarized the hearing testimony of the witnesses, and made credibility determinations consistent with *Hillen v. Department of the Army*, 35 M.S.P.R. 453, 458 (1987). ID at 3-15. Noting that the appellant admitted to taking a second helping of food without paying for it and that the video surveillance footage supported this finding, the administrative judge determined that the appellant was not credible when he testified that his diabetic status and low blood sugar explained his actions. ID at 14. Importantly, the administrative judge found that the appellant failed to exhibit a clear, direct, or straightforward demeanor during his testimony and his testimony was not consistent with the record evidence. ID at 14. The Board must defer to an administrative judge's credibility determinations when they are based, explicitly or implicitly, on observing the demeanor of witnesses testifying at a hearing; the Board may overturn such determinations only when it has "sufficiently sound" reasons for doing so. *Haebe v. Department of Justice*, 288 F.3d 1288, 1301 (Fed. Cir. 2002). The appellant has not presented such sufficiently sound reasons.

¶14    In sum, the Board will not disturb an administrative judge's credibility findings when she considered the evidence as a whole, drew appropriate inferences from the evidence, and made reasoned conclusions. *Crosby v. U.S. Postal Service*, 74 M.S.P.R. 98, 105-06 (1997). We therefore discern no basis for disturbing the administrative judge's finding that the agency proved the larceny charge.

<u>The administrative judge correctly found that the appellant failed to prove his affirmative defenses.</u>[3]

   *Disability discrimination*

¶15    Although not raised by the appellant on review, we address his disability discrimination claims.  In the initial decision, the administrative judge determined that the appellant failed to prove that he has an impairment that substantially limits him in any major life activity and, thus, he did not prove that he is disabled pursuant to 29 C.F.R. § 1630.2(g)(1)(i) or (ii).  ID at 23.  As set forth in 42 U.S.C. § 12102(2)(B), however, the term "major life activity" includes the operation of the endocrine function.  Moreover, the regulation at 29 C.F.R. § 1630.2(j)(3)(iii) advises that "it should easily be concluded that . . . diabetes substantially limits endocrine function."  Therefore, we modify the initial decision to conclude that the appellant has an impairment that substantially limits him in a major life activity, and we conclude that he is disabled.  Notwithstanding

---

[3] The appellant does not challenge the administrative judge's findings that he failed to prove his claim that the agency's action violated 5 U.S.C. §§ 2302(b)(10) and (12).  ID at 31-34.  We discern no reason to disturb the administrative judge's findings in this regard.

Further, the appellant does not challenge the administrative judge's conclusion that he did not prove his race discrimination claim.  ID at 16-22.  In the initial decision, the administrative judge applied the evidentiary standards set forth in *Savage v. Department of the Army*, 122 M.S.P.R. 612, ¶¶ 42-43, 48-49, 51 (2015), discussed the various types of direct and circumstantial evidence, and evaluated the relevant evidence.  ID at 16-22.  After the initial decision was issued, the Board clarified that the types of evidence set forth in *Savage* are not subject to differing evidentiary standards and explained that "all evidence belongs in a single pile and must be evaluated as a whole."  *Gardner v. Department of Veterans Affairs*, 123 M.S.P.R. 647, ¶ 29 (2016) (quoting *Ortiz v. Werner Enterprises, Inc.*, 834 F.3d 760, 766 (7th Cir. 2016)), *clarified by Pridgen v. Office of Management & Budget*, 2022 MSPB 31, ¶¶ 23-24.  Regardless of the administrative judge's characterization of the evidence relating to the appellant's race discrimination claim, she properly considered the evidence as a whole in finding that the appellant failed to prove this affirmative defense.  ID at 16-22.  Consequently, as mentioned above, we discern no reason to disturb the administrative judge's ultimate finding that the appellant failed to establish his race discrimination claim.

this modification, we agree with the administrative judge that the appellant failed to prove a reasonable accommodation claim because he admitted during the hearing that he never requested an accommodation for his medical condition. ID at 25-26; HT 2 at 138 (testimony of the appellant).

¶16     Moving to the appellant's disparate treatment disability discrimination claim, in a similar vein, we agree with the administrative judge that he failed to prove this affirmative defense. ID at 26-28. When the appellant was asked at the hearing, "Are you saying that DTRA removed you from federal service because you have diabetes?" he responded, "No, no." HT 2 at 139 (testimony of the appellant). Moreover, on petition for review, the appellant has not challenged the administrative judge's conclusion that he did not prove his disparate treatment disability discrimination claim because he failed to present any evidence supporting such a claim. Accordingly, the appellant failed to prove this claim.

### Harmful Procedural Error and Due Process

¶17     On review, the appellant reiterates his argument below that the agency committed harmful procedural error and violated his due process rights by stating in the notice of proposed removal that it was charging him with larceny in violation of 18 U.S.C. § 661, but stating in the decision letter that it was removing him for violating 18 U.S.C. § 641. PFR File, Tab 3 at 19-21; IAF, Tab 14 at 11-12.

¶18     The essential requirements of constitutional due process for a tenured public employee are notice of the charges against him, an explanation of the evidence, and an opportunity for him to present his account of events. *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 546 (1985). As for the appellant's harmful procedural error claim, the Board may not sustain an agency decision if there was harmful error in the application of its procedures. 5 U.S.C. § 7701(c)(2)(A). Harmful error cannot be presumed; an agency error is harmful only when the record shows that the procedural error was likely to have caused

the agency to reach a conclusion different from the one it would have reached in the absence or cure of the error. *Stephen v. Department of the Air Force*, 47 M.S.P.R. 672, 681, 685 (1991). It is the appellant's burden to prove that a procedural error occurred and that the error substantially prejudiced his rights such that the outcome was probably affected. *Mercer v. Department of Health & Human Services*, 772 F.2d 856, 859 (Fed. Cir. 1985); *Stephen*, 47 M.S.P.R. at 681, 685; 5 C.F.R. § 1201.56(c)(1).

¶19     Applying these standards, the administrative judge rejected the appellant's harmful procedural error and due process claims. ID at 28-31. The administrative judge found that the evidence demonstrated that the agency intended to charge the appellant with violating 18 U.S.C. § 661, and that the statement in the decision letter—that he had been charged with violating 18 U.S.C. § 641—appeared to be an administrative error. ID at 30-31. The administrative judge found that this error was harmless because there was no evidence that citing the incorrect statute caused the agency to reach a conclusion different from the one it would have reached in the absence or cure of the error. ID at 31. We agree with the administrative judge's conclusion in this regard. We also discern no error with the administrative judge's conclusion that the appellant's due process rights were not violated because the notice of proposed removal provided him with the specific facts and circumstances underlying the charge against him, and he had an opportunity to make a meaningful response. ID at 28-31; *see Loudermill*, 470 U.S. at 542-46.

¶20     The appellant also raises new allegations of harmful error on review. PFR File, Tab 3 at 15-19. For example, he alleges that the agency committed harmful procedural error by failing to provide him before his OIG interview with the warnings set forth in *Garrity et al. v. New Jersey*, 385 U.S. 493 (1967), and

*Kalkines v. United States*, 473 F.2d 1391 (Ct. Cl. 1973).[4]  PFR File, Tab 3 at 17-18.  He also contends that the agency failed to comply with the policies set forth in its Civilian Disciplinary and Adverse Actions Manual.  *Id.* at 15-17; IAF, Tab 22, Exhibit (Ex.) K at 30.

¶21    The Board generally will not consider an argument raised for the first time in a petition for review absent a showing that it is based on new and material evidence not previously available despite the party's due diligence.  *Banks v. Department of the Air Force*, 4 M.S.P.R. 268, 271 (1980).  As the appellant has not made such a showing regarding the allegations of harmful procedural error he raises for the first time on review, the Board need not consider them.  To the extent that the appellant's arguments are challenges to the penalty determination, rather than claims of harmful procedural error, we have considered them in evaluating the reasonableness of the penalty.

The administrative judge correctly found that there is a nexus between the appellant's misconduct and the efficiency of the service.

¶22    In addition to the requirement that the agency prove its charge, it also must prove that there is a nexus, i.e., a clear and direct relationship between the articulated grounds for an adverse action and either the appellant's ability to accomplish his duties satisfactorily or some other legitimate Government interest.  *Ellis v. Department of Defense*, 114 M.S.P.R. 407, ¶ 8 (2010).  On review, the appellant contends that the agency failed to meet its burden to prove nexus because of his "post-incident superior performance evaluation."  PFR File, Tab 3 at 24-25.

---

[4] *Garrity* and *Kalkines* set forth various procedural protections for employees who may face criminal prosecution.

¶23    We disagree.  An agency may establish nexus between off-duty misconduct[5] and the efficiency of the service by preponderant evidence by showing that the misconduct adversely affects the appellant's or coworkers' job performance or the agency's trust and confidence in the appellant's job performance.  *Ellis*, 114 M.S.P.R. 407, ¶ 9.  The appellant's subsequent performance evaluation is inconsequential because an agency is not required to demonstrate a specific impact on the appellant's job performance or service efficiency to establish a nexus between the appellant's off-duty misconduct and the efficiency of the service.  *Jordan v. Department of the Air Force*, 36 M.S.P.R. 409, 414 (1988), *aff'd*, 884 F.2d 1398 (Fed. Cir. 1989) (Table).  Further, the Board previously has found that off-duty misconduct involving an offense of theft can reasonably cause an agency to lose trust or confidence in an employee's ability to function in his position.  *See, e.g.*, *Fouquet v. Department of Agriculture*, 82 M.S.P.R. 548, ¶ 18 (1999).  Here, the administrative judge found that the appellant occupied a position of public trust and his collateral responsibilities included "identifying and protecting information, personnel, property, facilities, operations[,] or material from unauthorized disclosure, misuse, theft, assault, vandalism, espionage, sabotage[,] or loss."  ID at 36; IAF, Tab 6 at 29.  Given the seriousness of the appellant's actions and his responsibilities as a Security Specialist, we find that the appellant's misconduct adversely affected the

[5] In his prehearing submission, the appellant asserted that he was off duty at the time of the misconduct.  IAF, Tab 22, Ex. M.  However, in his testimony, he stated that he came into work that morning, "was in the office for an hour or so to check emails," went to the gym, took a shower, and then went to the cafeteria to get something to eat.  HT 2 at 63-64 (testimony of the appellant).  The record further reflects that employees are given up to 3 hours of administrative leave per week to accomplish fitness activities.  HT 1 at 103 (testimony of the OIG investigator).  Thus, while it appears that the misconduct occurred during a routine meal break, we cannot discern whether the appellant was on duty or off duty at the time of the misconduct.  However, even if we determined that it was on-duty misconduct, removal would not be an appropriate penalty for the reasons described herein.

agency's trust and confidence in his ability to perform his job. HT 1 at 327-30 (testimony of the deciding official). Therefore, we find that there is a nexus between the sustained misconduct and the efficiency of the service warranting disciplinary action.

<u>Because the deciding official failed to appropriately consider the relevant factors, the agency's penalty determination is not entitled to deference.</u>

¶24    On review, the appellant challenges the administrative judge's finding that removal is a reasonable penalty. PFR File, Tab 3 at 1, 21-28; ID at 39. When the agency's charge has been sustained, the Board will review an agency-imposed penalty only to determine if the agency considered all of the relevant factors and exercised management discretion within tolerable limits of reasonableness. *Stuhlmacher v. U.S. Postal Service*, 89 M.S.P.R. 272, ¶ 20 (2001); *Douglas v. Veterans Administration*, 5 M.S.P.R. 280, 306 (1981). In *Douglas*, 5 M.S.P.R. at 305-06, the Board listed 12 nonexhaustive factors that are relevant in assessing the penalty to be imposed for an act of misconduct, including: the nature and seriousness of the offense, and its relation to the appellant's duties, position, and responsibilities; the appellant's job level and type of employment; his past disciplinary record; and his past work record, including his length of service and performance history. In determining whether the selected penalty is reasonable, the Board gives due weight to the agency's discretion in exercising its managerial function of maintaining employee discipline and efficiency. *Stuhlmacher*, 89 M.S.P.R. 272, ¶ 20. The Board will modify a penalty only when it finds that the agency failed to weigh the relevant factors or that the penalty the agency imposed clearly exceeded the bounds of reasonableness. *Id.* However, if the deciding official failed to appropriately consider the relevant factors, the Board need not defer to the agency's penalty determination. *Id.*

¶25    Based on our review of the record, including the deciding official's analysis of the *Douglas* factors, we find that the deciding official failed to appropriately consider all of the relevant factors in determining the penalty. As the

administrative judge noted, the Board and the U.S. Court of Appeals for the Federal Circuit have found that the de minimis nature of a theft may be a significant mitigating factor when, as in this appeal, the appellant has a satisfactory work record and no prior discipline. ID at 36 (citing *Miguel v. Department of the Army*, 727 F.2d 1081 (Fed. Cir. 1984), and *Underwood v. Department of Defense*, 53 M.S.P.R. 355, *aff'd*, 980 F.2d 744 (Fed. Cir. 1992) (Table)). The deciding official's testimony shows that she did not treat the de minimis nature of the theft as a mitigating factor. For instance, she testified that she "dismissed" the de minimis nature of the theft in deciding what penalty to impose because "what matters is the action," i.e., the misconduct, which, in her view, demonstrated a "lack of character" and caused her not to trust the appellant. HT 1 at 328 (testimony of the deciding official). She further stated that someone who steals "has a character flaw" and "should not be working as a senior security professional . . . with a security clearance in the Department of Defense." *Id.* at 374.

¶26   Additionally, the record shows that the deciding official failed to consider the appellant's lengthy service (30 years) and his satisfactory work record as mitigating factors. In her written *Douglas* factors analysis, the deciding official identified these factors as "NEUTRAL" and stated that she considered them "irrelevant vis-à-vis the offense." IAF, Tab 6 at 21. In her hearing testimony, the deciding official explained that she considered these factors irrelevant because stealing "shows a character flaw." HT 1 at 376 (testimony of the deciding official).

¶27   We find that the de minimis nature of the theft, the appellant's 30 years of service, and his satisfactory work record are relevant mitigating factors in this case; however, the deciding official did not treat them as mitigating factors in determining the penalty. Instead, as discussed above, the deciding official deemed these factors "irrelevant." We therefore find that the deciding official's treatment of the mitigating factors was not sufficiently substantive, and we do not

defer to her penalty determination. *See Stuhlmacher*, 89 M.S.P.R. 272, ¶ 24 (finding that it was appropriate not to defer to the deciding official's penalty determination because his treatment of the mitigating factors was not sufficiently substantive); *Omites v. U.S. Postal Service*, 87 M.S.P.R. 223, ¶ 11 (2000) (finding that the administrative judge correctly did not defer to the agency's penalty determination because the agency failed to seriously consider the relevant *Douglas* factors). Accordingly, we will review the penalty imposed in light of the considerations articulated in *Douglas* to determine whether the penalty exceeds the bounds of reasonableness. *Brown v. Department of the Treasury*, 91 M.S.P.R. 60, ¶ 17 (2002).

A 90-day suspension is the maximum reasonable penalty for the appellant's misconduct in light of all of the attendant circumstances.

¶28       The most important factor in assessing whether the agency's chosen penalty is within the tolerable bounds of reasonableness is the nature and seriousness of the misconduct and its relation to the employee's duties, position, and responsibilities. *Edwards v. U.S. Postal Service*, 116 M.S.P.R. 173, ¶ 14 (2010). As previously discussed, the appellant's misconduct is very serious, especially considering that it involved the violation of a criminal statute. *Mann v. Department of Health & Human Services*, 78 M.S.P.R. 1, 12 (1998). The misconduct also is related to the appellant's duties, position, and responsibilities, as his collateral responsibilities included protection of information and property from theft or misuse, IAF, Tab 6 at 29, and his position required him to exercise good judgment, *id.* at 19. Further, the appellant's misconduct was intentional and committed for the purpose of achieving a private gain. In addition, because he occupied a position of trust and, therefore, owed the agency and the public a fiduciary duty, IAF, Tab 6 at 20, the Board may hold him to a higher standard of

conduct than other employees in reviewing the propriety of the penalty, *Fowler v. U.S. Postal Service*, 77 M.S.P.R. 8, 13 (1997).[6]

¶29     There are, however, several mitigating factors in this appeal.  The appellant has 30 years of discipline-free Federal service.  IAF, Tab 6 at 25; HT 2 at 43 (testimony of the appellant); *see Wentz v. U.S. Postal Service*, 91 M.S.P.R. 176, ¶ 18 (2002) (finding that 13 years of discipline-free service was a significant mitigating factor).  He also performed his job duties successfully, even after his misconduct.  HT 1 at 287-88 (testimony of the appellant's immediate supervisor), HT 2 at 43 (testimony of the appellant).  In addition, the value of the items taken was de minimis, IAF, Tab 6 at 37, and his misconduct was not repeated.  *See, e.g.*, *McNeil v. Department of Justice*, 117 M.S.P.R. 533, ¶ 16 (2012) (finding that the fact that the charge represented a single, isolated incident was a mitigating factor); *Skates v. Department of the Army*, 69 M.S.P.R. 366, 368 (1996) (noting that the Board and courts have long held that the de minimis value of stolen items is a factor to be considered in a penalty determination depending on the "unique circumstances of each case"); *Douglas*, 5 M.S.P.R. at 305 (stating that a relevant penalty consideration is whether the offense was "frequently repeated").

¶30     Further, although not addressed by the deciding official or the administrative judge, another mitigating factor in this case is that the appellant did not have custody or control over the stolen items as part of his official duties.  Our reviewing court and the Board have treated this as a significant mitigating factor in cases involving de minimis theft, including cases in which the appellant occupied a position of trust.  *See, e.g.*, *Miguel*, 727 F.2d at 1082, 1084

---

[6] Although the deciding official identified the notoriety of the appellant's misconduct as an aggravating factor, IAF, Tab 6 at 21-22, we find no evidence in the record to suggest that the appellant's misconduct resulted in any adverse publicity outside the agency (or Sodexho) or that the offense had any impact on the agency's reputation or its mission. *See, e.g.*, *Brown*, 91 M.S.P.R. 60, ¶ 21.

(remanding for a determination of a lesser penalty after concluding that removal was too harsh for a commissary cashier who took two bars of soap valued at $2.10); *Skates*, 69 M.S.P.R. at 368-69 (mitigating a removal to a 14-day suspension for the appellant's theft of left-over food of a de minimis value from the dining room where he worked when there was no specific evidence that he was in control over the food that he took); *Chauvin v. Department of the Navy*, 66 M.S.P.R. 590, 592-93 & n.1 (1995) (mitigating to a 30-day suspension the demotion of a shipfitter foreman for the unauthorized possession and attempted removal of scrap metal valued at $2.60 because, among other things, the appellant did not have custody and control over the property as part of his official duties); *Kelly v. Department of Health & Human Services*, 46 M.S.P.R. 358, 359, 362-63 (1990) (mitigating to a 90-day suspension the removal of a claims representative who was convicted of off-duty shoplifting, finding that the items she took did not come into her possession as a result of her position). Conversely, the Board and our reviewing court have found that mitigating the agency's chosen penalty for de minimis theft is inappropriate when the employee gained control over the stolen item as a direct result of his position. *See, e.g.*, *DeWitt v. Department of the Navy*, 747 F.2d 1442, 1445 (Fed. Cir. 1984) (sustaining a commissary worker's removal for taking $14.00 worth of groceries because "[w]here the employee takes unauthorized personal possession of property entrusted to his care and responsibility, the breach of trust is difficult to repair"); *Underwood*, 53 M.S.P.R. at 359 (sustaining a material worker's removal for the attempted theft of two jars of cinnamon that she was responsible for loading and, thus, came within her custody and control).

¶31      In sum, although the appellant committed a serious act of misconduct, he had no history of prior discipline, he did not repeat the misconduct, the value of the stolen items was de minimis, and the items were not in his custody and control. In addition, his performance record during his 30-year Federal career, both before and after the incident, has been very good. Given these

circumstances, we find that removing the appellant would be contrary to the agency's policy of imposing the "lowest possible penalty reasonably expected to correct the employee's behavior." IAF, Tab 22, Ex. K at 30. Thus, while a significant disciplinary action is necessary to impress upon the appellant the wrongfulness of his conduct, we find that the penalty of removal exceeds the tolerable limits of reasonableness.[7]

¶32　　Under the facts and circumstances of this case, we find that the maximum reasonable penalty is a 90-day suspension. Such a penalty recognizes the seriousness of the offense and its severity will impress upon the appellant and other DTRA employees that such conduct will not be tolerated. *See Ciulla v. U.S. Postal Service*, 37 M.S.P.R. 627, 628-29, 631 (1988) (mitigating to a 90-day suspension the removal of a Postal Distribution Clerk for taking items of de minimis value from salvage mail).

¶33　　This is the final decision of the Merit Systems Protection Board in this appeal. Title 5 of the Code of Federal Regulations, section 1201.113 (5 C.F.R. § 1201.113).

ORDER

¶34　　We ORDER the agency to cancel the removal action and substitute a 90-day suspension and to restore the appellant effective January 25, 2015. *See Kerr v. National Endowment for the Arts*, 726 F.2d 730 (Fed. Cir. 1984). The agency must complete this action no later than 20 days after the date of this decision.

¶35　　We also ORDER the agency to pay the appellant the correct amount of back pay, interest on back pay, and other benefits under the Office of Personnel Management's regulations, no later than 60 calendar days after the date of this decision. We ORDER the appellant to cooperate in good faith in the agency's

---

[7] We have considered the appellant's remaining arguments regarding the penalty factors, including the impact of his diabetes on the misconduct. *E.g.*, PFR File, Tab 3 at 22. We are not persuaded that any lesser penalty is warranted.

efforts to calculate the amount of back pay, interest, and benefits due, and to provide all necessary information the agency requests to help it carry out the Board's Order. If there is a dispute about the amount of back pay, interest due, and/or other benefits, we ORDER the agency to pay the appellant the undisputed amount no later than 60 calendar days after the date of this decision.

¶36 We further ORDER the agency to tell the appellant promptly in writing when it believes it has fully carried out the Board's Order and of the actions it has taken to carry out the Board's Order. The appellant, if not notified, should ask the agency about its progress. *See* 5 C.F.R. § 1201.181(b).

¶37 No later than 30 days after the agency tells the appellant that it has fully carried out the Board's Order, the appellant may file a petition for enforcement with the office that issued the initial decision in this appeal if the appellant believes that the agency did not fully carry out the Board's Order. The petition should contain specific reasons why the appellant believes that the agency has not fully carried out the Board's Order, and should include the dates and results of any communications with the agency. 5 C.F.R. § 1201.182(a).

¶38 For agencies whose payroll is administered by either the National Finance Center of the Department of Agriculture (NFC) or the Defense Finance and Accounting Service (DFAS), two lists of the information and documentation necessary to process payments and adjustments resulting from a Board decision are attached. The agency is ORDERED to timely provide DFAS or NFC with all documentation necessary to process payments and adjustments resulting from the Board's decision in accordance with the attached lists so that payment can be made within the 60-day period set forth above.

NOTICE TO THE APPELLANT
REGARDING YOUR RIGHT TO REQUEST
ATTORNEY FEES AND COSTS

You may be entitled to be paid by the agency for your reasonable attorney fees and costs. To be paid, you must meet the requirements set out at Title 5 of

the United States Code (U.S.C.), sections 7701(g), 1221(g), or 1214(g). The regulations may be found at 5 C.F.R. §§ 1201.201, 1202.202, and 1201.203. If you believe you meet these requirements, you must file a motion for attorney fees and costs WITHIN 60 CALENDAR DAYS OF THE DATE OF THIS DECISION. You must file your motion for attorney fees and costs with the office that issued the initial decision on your appeal.

NOTICE OF APPEAL RIGHTS[8]

You may obtain review of this final decision. 5 U.S.C. § 7703(a)(1). By statute, the nature of your claims determines the time limit for seeking such review and the appropriate forum with which to file. 5 U.S.C. § 7703(b). Although we offer the following summary of available appeal rights, the Merit Systems Protection Board does not provide legal advice on which option is most appropriate for your situation and the rights described below do not represent a statement of how courts will rule regarding which cases fall within their jurisdiction. If you wish to seek review of this final decision, you should immediately review the law applicable to your claims and carefully follow all filing time limits and requirements. Failure to file within the applicable time limit may result in the dismissal of your case by your chosen forum.

Please read carefully each of the three main possible choices of review below to decide which one applies to your particular case. If you have questions about whether a particular forum is the appropriate one to review your case, you should contact that forum for more information.

**(1) Judicial review in general**. As a general rule, an appellant seeking judicial review of a final Board order must file a petition for review with the U.S.

---

[8] Since the issuance of the initial decision in this matter, the Board may have updated the notice of review rights included in final decisions. As indicated in the notice, the Board cannot advise which option is most appropriate in any matter.

Court of Appeals for the Federal Circuit, which must be <u>received</u> by the court within **60 calendar days** of <u>the date of issuance</u> of this decision.  [5 U.S.C. § 7703](b)(1)(A).

If you submit a petition for review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C.  20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit.  The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

**(2) <u>Judicial or EEOC review of cases involving a claim of discrimination</u>**.  This option applies to you <u>only</u> if you have claimed that you were affected by an action that is appealable to the Board and that such action was based, in whole or in part, on unlawful discrimination.  If so, you may obtain judicial review of this decision—<u>including a disposition of your discrimination claims</u>—by filing a civil action with an appropriate U.S. district court (*not* the U.S. Court of Appeals for the Federal Circuit), within **30 calendar days** <u>after you receive</u> this decision.  [5 U.S.C. § 7703](b)(2); *see Perry v. Merit Systems Protection Board*, 582 U.S. \_\_\_\_ , [137 S. Ct. 1975](2017).  If you have a

representative in this case, and your representative receives this decision before you do, then you must file with the district court no later than **30 calendar days** after your representative receives this decision. If the action involves a claim of discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security. *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.

Contact information for U.S. district courts can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

Alternatively, you may request review by the Equal Employment Opportunity Commission (EEOC) of your discrimination claims only, excluding all other issues. 5 U.S.C. § 7702(b)(1). You must file any such request with the EEOC's Office of Federal Operations within **30 calendar days** after you receive this decision. 5 U.S.C. § 7702(b)(1). If you have a representative in this case, and your representative receives this decision before you do, then you must file with the EEOC no later than **30 calendar days** after your representative receives this decision.

If you submit a request for review to the EEOC by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C.  20013

If you submit a request for review to the EEOC via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, N.E.
Suite 5SW12G
Washington, D.C.  20507

**(3) Judicial review pursuant to the Whistleblower Protection Enhancement Act of 2012**.  This option applies to you only if you have raised claims of reprisal for whistleblowing disclosures under 5 U.S.C. § 2302(b)(8) or other protected activities listed in 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D). If so, and your judicial petition for review "raises no challenge to the Board's disposition of allegations of a prohibited personnel practice described in section 2302(b) other than practices described in section 2302(b)(8), or 2302(b)(9)(A)(i), (B), (C), or (D)," then you may file a petition for judicial review either with the U.S. Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction.[9]  The court of appeals must receive your petition for review within **60 days** of the date of issuance of this decision. 5 U.S.C. § 7703(b)(1)(B).

If you submit a petition for judicial review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

> U.S. Court of Appeals
> for the Federal Circuit
> 717 Madison Place, N.W.
> Washington, D.C.  20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

---

[9]  The original statutory provision that provided for judicial review of certain whistleblower claims by any court of appeals of competent jurisdiction expired on December 27, 2017.  The All Circuit Review Act, signed into law by the President on July 7, 2018, permanently allows appellants to file petitions for judicial review of MSPB decisions in certain whistleblower reprisal cases with the U.S. Court of Appeals for the Federal Circuit or any other circuit court of appeals of competent jurisdiction. The All Circuit Review Act is retroactive to November 26, 2017.  Pub. L. No. 115-195, 132 Stat. 1510.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

Contact information for the courts of appeals can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

FOR THE BOARD:

/s/

Jennifer Everling
Acting Clerk of the Board
Washington, D.C.



**DEFENSE FINANCE AND ACCOUNTING SERVICE**
**Civilian Pay Operations**

# DFAS BACK PAY CHECKLIST

The following documentation is required by DFAS Civilian Pay to compute and pay back pay pursuant to 5 CFR § 550.805.  Human resources/local payroll offices should use the following checklist to ensure a request for payment of back pay is complete.  Missing documentation may substantially delay the processing of a back pay award.  **More information may be found at: https://wss.apan.org/public/DFASPayroll/Back%20Pay%20Process/Forms/AllItems.aspx.**

**NOTE:  Attorneys' fees or other non-wage payments (such as damages) are paid by vendor pay, not DFAS Civilian Pay.**

☐  1) Submit a **"SETTLEMENT INQUIRY - Submission"** Remedy Ticket.  Please identify the specific dates of the back pay period within the ticket comments.

Attach the following documentation to the Remedy Ticket, or provide a statement in the ticket comments as to why the documentation is not applicable:

☐  2) Settlement agreement, administrative determination, arbitrator award, or order.

☐  3) Signed and completed "Employee Statement Relative to Back Pay".

☐  4) All required SF50s (new, corrected, or canceled).  **\*\*\*Do not process online SF50s until notified to do so by DFAS Civilian Pay.\*\*\***

☐  5) Certified timecards/corrected timecards.  **\*\*\*Do not process online timecards until notified to do so by DFAS Civilian Pay.\*\*\***

☐  6) All relevant benefit election forms (e.g. TSP, FEHB, etc.).

☐  7) Outside earnings documentation.  Include record of all amounts earned by the employee in a job undertaken during the back pay period to replace federal employment.  Documentation includes W-2 or 1099 statements, payroll documents/records, etc.  Also, include record of any unemployment earning statements, workers' compensation, CSRS/FERS retirement annuity payments, refunds of CSRS/FERS employee premiums, or severance pay received by the employee upon separation.

**Lump Sum Leave Payment Debts:**  When a separation is later reversed, there is no authority under 5 U.S.C. § 5551 for the reinstated employee to keep the lump sum annual leave payment they may have received.  The payroll office must collect the debt from the back pay award.  The annual leave will be restored to the employee.  Annual leave that exceeds the annual leave ceiling will be restored to a separate leave account pursuant to 5 CFR § 550.805(g).



**NATIONAL FINANCE CENTER CHECKLIST FOR BACK PAY CASES**

Below is the information/documentation required by National Finance Center to process payments/adjustments agreed on in Back Pay Cases (settlements, restorations) or as ordered by the Merit Systems Protection Board, EEOC, and courts**.**

1. Initiate and submit AD-343 (Payroll/Action Request) with clear and concise information describing what to do in accordance with decision.

2. The following information must be included on AD-343 for Restoration:

   a. Employee name and social security number.
   b. Detailed explanation of request.
   c. Valid agency accounting.
   d. Authorized signature (Table 63).
   e. If interest is to be included.
   f. Check mailing address.
   g. Indicate if case is prior to conversion.  Computations must be attached.
   h. Indicate the amount of Severance and Lump Sum Annual Leave Payment to be collected (if applicable).

Attachments to AD-343

1. Provide pay entitlement to include Overtime, Night Differential, Shift Premium, Sunday Premium, etc. with number of hours and dates for each entitlement (if applicable).
2. Copies of SF-50s (Personnel Actions) or list of salary adjustments/changes and amounts.
3. Outside earnings documentation statement from agency.
4. If employee received retirement annuity or unemployment, provide amount and address to return monies.
5. Provide forms for FEGLI, FEHBA, or TSP deductions. (if applicable)
6. If employee was unable to work during any or part of the period involved, certification of the type of leave to be charged and number of hours.
7. If employee retires at end of Restoration Period, provide hours of Lump Sum Annual Leave to be paid.

NOTE:  If prior to conversion, agency must attach Computation Worksheet by Pay Period and required data in 1-7 above.

The following information must be included on AD-343 for Settlement Cases:  (Lump Sum Payment, Correction to Promotion, Wage Grade Increase, FLSA, etc.)

   a. Must provide same data as in 2, a-g above.
   b. Prior to conversion computation must be provided.
   c. Lump Sum amount of Settlement, and if taxable or non-taxable.

If you have any questions or require clarification on the above, please contact NFC's Payroll/Personnel Operations at 504-255-4630.

¶1      For the reasons explained below, I respectfully dissent from the majority opinion in this case.

¶2      The agency removed the appellant from his GS-14 Security Specialist position with the Security and Counterintelligence Office of the Defense Threat Reduction Agency at Fort Belvoir, Virginia.  Initial Appeal File (IAF), Tab 1 at 10-13.  As the Foreign Disclosure Officer and Chief of the Foreign Disclosure Branch, the appellant recommended to his second-line supervisor what classified and other sensitive national security information should be released to foreign governments regarding the combating of weapons of mass destruction.  IAF, Tab 6 at 28-31.  The position required liaising and negotiating with positional counterparts in other Federal defense agencies, *id.* at 31; Hearing Transcript, Day 1 (HT 1) at 246-47 (testimony of the appellant's supervisor), as well as "identifying and protecting information, personnel, property, facilities, operations or material from unauthorized disclosure, misuse, theft, assault, vandalism, espionage, sabotage or loss," IAF, Tab 6 at 29.  The appellant's job required him to maintain a Top Secret/SCI (Sensitive Compartmented Information) security clearance.  *Id.* at 31.

¶3      The removal was based on a charge of larceny in violation of 18 U.S.C. § 641.  *Id.* at 15-18, 25.  Specifically, the agency charged that the appellant left a cafeteria on the military base where he worked without first paying for all the food he took.  His actions were captured on videotape by surveillance cameras in the cafeteria. IAF, Tab 7.  The surveillance footage shows the appellant:  filling a container at a self-serve food bar when a police officer entered the cafeteria to get food as well; going to a cashier, paying for an initial amount of food while

looking around for the police officer, and placing the container of food into a plastic bag; immediately returning to the food bar and, upon ensuring no one was watching, removing the container from the plastic bag, adding additional food, and placing the container back in the plastic bag; beginning to leave the cafeteria but then, on noticing the police officer standing at the cashier, abruptly stopping, turning around to hide at the back of the cafeteria near an emergency exit door, and waiting until the police officer exited; and then leaving the cafeteria without paying for the additional food, passing one other individual standing at the cashier. *Id.*

¶4 A cafeteria employee observed the appellant's actions and reported what happened to his manager. HT 1 at 87-88 (testimony of the cafeteria employee). The incident was eventually referred for investigation to the agency's Office of Inspector General (OIG), which interviewed the appellant 2 ½ months later. IAF, Tab 6 at 32, 34. During the interview, one of the OIG investigators specifically asked the appellant if he ever took food from the cafeteria without paying for it, which he denied. *Id.* at 34. When the OIG investigator approached a television and asked the appellant to explain the video he was about to see, the appellant immediately interrupted him to admit he failed to pay once, explaining, "I was impatient and there must have been a line." *Id.* at 34; HT 1 at 104-05. A few hours after the interview, the appellant returned to the OIG's office to explain that his blood sugar might have been low the day he took the food, and that might have been why he did not pay. HT 1 at 109-10; Hearing Transcript, Day 2 (HT 2) at 106-07. However, the OIG investigator testified at the hearing that the appellant displayed no symptoms of having low blood sugar in the surveillance video. HT 1 at 150-53.

¶5 The agency subsequently suspended the appellant's security clearance, HT 2 at 136-37, and the appellant's first-line supervisor proposed to remove him, noting that his conduct "demonstrates a lack of judgment and honesty that is required for [his] position" and that "as a GS-14 [he is] expected to set the

example for junior personnel to follow," IAF, Tab 6 at 26.  In his oral and written replies, the appellant argued, among other things, that due to his diabetes his blood sugar needed immediate attention at the time of the incident.  *Id.* at 15.  The appellant's second-line supervisor (the deciding official) sustained the appellant's removal.  *Id.*  In an accompanying worksheet, she outlined her consideration of each of the 12 *Douglas* factors, noting among other things that the appellant's position requires that he use good judgment to make sound decisions to protect sensitive national security information; that he is a leader of a team of Security Specialists for whom he is expected to lead by example, and that as a GS-14 Senior Security Specialist, he is held to a higher standard than lower-graded employees; that the video shows an offense that "was intentional and willful, not inadvertent or the result of an immediate need to eat"—in other words, "a deliberate intent to steal"; that he initially lied about his actions to investigators; that, even after admitting the offense, he failed to take responsibility for his actions; that both the offense and his subsequent statements and behavior were indicative of criminal, questionable judgment; and that both his and the agency's credibility were key in working successfully with partner agencies in the Federal Government. *Id.* at 19-24.  She also underscored that the appellant's "actions and inactions display a basic lack of integrity," and concluded: "The single most important factor in promoting the good order, discipline, efficiency, effectiveness of service, and *esprit de corps* is trust. Managers must be able to trust employees . . . .  Ultimately, I do not trust [the appellant]." *Id.* at 24.

¶6      On appeal to the Board, the administrative judge held two days of hearings and issued a thorough and comprehensive initial decision in which she found the charge sustained and determined that removal was a reasonable penalty under the circumstances.  IAF, Tab 25, Initial Decision (ID) at 1, 35, 39.  She found that several claims the appellant made to the OIG and later to the agency were belied by the evidence (for instance, claiming the line at the cashier was too long for

him to wait to pay, despite the video plainly showing only one person standing in line, and later claiming "a sudden need to ingest food" because of his diabetes when he did not eat the food immediately after stealing it). ID at 12-13. Significantly, she also made a demeanor-based determination that the appellant's testimony lacked credibility—precisely the same qualification at issue in the agency's contention that it could no longer fully trust the appellant given his critical duties. ID at 14. Among other things, the administrative judge also cited the appellant's lack of remorse and denial of his actions until the OIG was about to show him video evidence, ID at 15; the deciding official's testimony that the surveillance video of the incident was critical in her decision to remove the appellant, ID at 10, that she no longer trusted him with classified information, ID at 33, and that her lack of trust in him overrode any rehabilitation potential, *id.*; and the fact that he held the highest security clearance level available to a civilian, *id.* The administrative judge, moreover, dedicated 5 ½ pages of her decision to assessing the reasonableness of the imposed penalty. ID at 34-39. She concluded: "While I believe the appellant's lengthy service history and absence of a disciplinary record are worthy of serious consideration, I find the appellant's position, duties, and responsibilities, and the agency's mission[,] make returning him to the position of record impossible despite the de minimis value of the items he stole." ID at 39.

¶7      In the majority opinion, my colleagues agree the administrative judge correctly found the agency proved the larceny charge, but voted to mitigate the removal to a 90-day suspension. In situations such as this when the administrative judge sustains the charges brought by the agency, the Board reviews the agency-imposed penalty only to determine if the agency considered all the relevant factors and exercised management discretion "within the tolerable limits of reasonableness." *Singletary v. Department of the Air Force*, 94 M.S.P.R. 553, ¶ 9 (2003), *aff'd*, 104 F. App'x 155 (Fed. Cir. 2004); *Douglas v. Veterans Administration*, 5 M.S.P.R. 280, 305-06 (1981). As our reviewing court

held 35 years ago, "It is well established that the determination of the proper disciplinary action to be taken to promote the efficiency of the service is a matter peculiarly and necessarily within the discretion of the agency." *Parker v. U.S. Postal Service*, 819 F.2d 1113, 1116 (Fed. Cir. 1987). "Indeed," the court continued, "deference is given to the agency's judgment unless the penalty exceeds the range of permissible punishment specified by statute or regulation, or unless the penalty is 'so harsh and unconscionably disproportionate to the offense that it amounts to an abuse of discretion.'" *Id.* (quoting *Villela v. Department of the Air Force*, 727 F.2d 1574, 1576 (Fed. Cir. 1984)). Thus, it is decidedly *not* the Board's role to decide what penalty we would impose if we were the deciding officials. We held in the case of *Douglas*, our first major consideration of this issue after the Board's creation:

> Management of the federal work force and maintenance of discipline among its members is not the Board's function. Any margin of discretion available to the Board in reviewing penalties must be exercised with appropriate deference to the primary discretion which has been entrusted to agency management, not to the Board. Our role in this area, as in others, is principally to assure that managerial discretion has been legitimately invoked and properly exercised.

5 M.S.P.R. at 300-01.

¶8        Here, the administrative judge considered the deciding official's testimony, finding it consistent with the agency's decision letter and the *Douglas* factors checklist she completed. IAF, Tab 6 at 19-24. As outlined above, the considerations most important to the deciding official were the seriousness of the appellant's willful and intentional misconduct, his display of poor judgment, his public trust position as a Senior Security Specialist (which carries the highest civilian clearance level at the agency and thereby causes him to be held to a higher standard, such as requiring him to self-report all incidents of an unfavorable, a disqualifying, or a derogatory nature), the fact that he only admitted to the theft after being confronted with video evidence of the incident, the embarrassment and lack of trust that his misconduct caused, and the

deleterious effect the dishonest behavior would have upon his ability to perform his duties at a satisfactory level.

¶9        Although my colleagues state that the deciding official failed to adequately consider the appellant's 30 years of service and the de minimis nature of the offense, I cannot agree.  For instance, the removal decision letter, addressed to the appellant, clearly reads, "You highlighted in your argument that the amount of food stolen was di minimis, . . . your years of experience in the federal government, and your work history."  IAF, Tab 6 at 15.  The deciding official also testified at the hearing that she did in fact consider the appellant's lengthy service when she assessed which penalty to impose.  HT 1 at 313, 374-75.  Yet as she recorded on her *Douglas* factor worksheet, this factor was outweighed by "the level of responsibility, the fiduciary responsibilities, and the expectation of exemplary personal conduct."  IAF, Tab 6 at 21.

¶10        Furthermore, a considerable amount of time was spent discussing the de minimis issue at the hearing, during direct examination and especially during cross-examination of the deciding official.  HT 1 at 313, 327-29, 356-66, 368, 376-79.  In particular, the deciding official testified that, although she considered the de minimis amount of stolen food as a factor, in her judgment, "a person who will take shortcuts, lie, cheat, and steal . . . on something as miniscule as $5.00 of food is more apt to take those steps with things that are more important . . . ."  *Id.* at 328-29.  She further testified that "a kind of person who would take a shortcut and not pay for something, in other words steal it, is the kind of person who would take a shortcut in the performance of other duties which are assigned to [him]."  *Id.* at 364.  She emphasized that, given the critical nature of the appellant's position and the importance of the agency's mission, i.e., to prevent the spread and proliferation of weapons of mass destruction, "[t]hose shortcuts could result in a national security event."  *Id.*

¶11        Likewise, the deciding official testified that she reviewed and discussed with agency counsel the "squib sheet" or summary of court and Board decisions—

specifically dealing with the mitigation of removal actions for employees accused of offenses of a de minimis nature—that the appellant's counsel presented to her during the oral reply. Despite her review and evaluation of this case law, however, the deciding official still believed that the holdings in those cases did not warrant mitigating the removal penalty in this matter. *Id.* at 377-79. To me, the deciding official clearly demonstrated that she considered all specific, relevant mitigating factors before determining the penalty and showed that the agency's judgment to impose a removal did not clearly exceed the limits of reasonableness. *Lopez v. Department of the Navy*, 108 M.S.P.R 384, ¶ 22 (2008).

¶12 The administrative judge reviewed the same factors the deciding official considered, as well as the fact that, as part of his duties, the appellant was responsible for "protecting information, personnel, property, facilities, operations or material from unauthorized disclosure, misuse, **theft . . .**." ID at 33, 39 (emphasis in original). She also considered other critical issues not mentioned in the majority opinion, such as the appellant's initial dishonesty in his dealings with OIG investigators, which goes to the heart of the issue of trust the deciding official cited in finding the appellant incapable of rehabilitation. ID at 12-13, 15. Further making the agency's point, the administrative judge concluded that the appellant displayed a lack of credibility in his hearing testimony, finding that he "failed to exhibit a clear, direct, or straightforward demeanor during his testimony and his testimony does not support the evidence of record." ID at 14; *see Haebe v. Department of Justice*, 288 F.3d 1288, 1301 (Fed. Cir. 2002) (holding that the Board must defer to an administrative judge's credibility determinations when they are based, explicitly or implicitly, on observing the demeanor of witnesses testifying at a hearing; the Board may overturn such determinations only when it has "sufficiently sound" reasons for doing so).

¶13 To me, these factors are quite convincing. The administrative judge determined that the deciding official—the official most responsible in the Government for relying on the good judgment of the appellant, as the second-line

supervisor to whom he makes recommendations on releasing classified and other sensitive information—properly considered the *Douglas* factors most relevant to this case and reasonably exercised her management discretion. I believe the administrative judge also properly considered the de minimis nature of the appellant's theft and his 30 years of service, but agreed with the deciding official that those factors were outweighed by the numerous other aggravating factors. I acknowledge that if I were the deciding official at the agency, I might have considered this case a "very close call," as did the administrative judge. ID at 39. However, I cannot find that the agency's penalty determination was outside of the tolerable limits of reasonableness, and thus I firmly agree with the administrative judge that it should not be disturbed.

/s/
_____
Tristan L. Leavitt
Member