**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**

| | |
|---|---|
| LAWRENCE SMITH,<br>                    Appellant, | DOCKET NUMBER<br>DA-0752-16-0383-I-1 |
|                v. | |
| DEPARTMENT OF JUSTICE,<br>                    Agency. | DATE:  February 1, 2024 |

# THIS FINAL ORDER IS NONPRECEDENTIAL[1]

Jennifer D. Isaacs, Esquire, Atlanta, Georgia, for the appellant.

Susan E. Gibson, Esquire, Washington, D.C., for the agency.

**BEFORE**

Cathy A. Harris, Vice Chairman
Raymond A. Limon, Member

**FINAL ORDER**

The appellant has filed a petition for review of the initial decision, which sustained his removal.  Generally, we grant petitions such as this one only in the following circumstances:  the initial decision contains erroneous findings of material fact; the initial decision is based on an erroneous interpretation of statute or regulation or the erroneous application of the law to the facts of the case; the administrative judge's rulings during either the course of the appeal or the initial

---

[1]  A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law.  Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions.  In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law.  *See* 5 C.F.R. § 1201.117(c).

decision were not consistent with required procedures or involved an abuse of discretion, and the resulting error affected the outcome of the case; or new and material evidence or legal argument is available that, despite the petitioner's due diligence, was not available when the record closed. Title 5 of the Code of Federal Regulations, section 1201.115 (5 C.F.R. § 1201.115). After fully considering the filings in this appeal, we conclude that the petitioner has not established any basis under section 1201.115 for granting the petition for review. Therefore, we DENY the petition for review and AFFIRM the initial decision, which is now the Board's final decision. 5 C.F.R. § 1201.113(b).

## BACKGROUND

Effective May 13, 2016, the agency removed the appellant from his position as a Deputy U.S. Marshal. Initial Appeal File (IAF), Tab 4 at 10-11, 15. According to the following undisputed facts, his removal stemmed from a February 11, 2015 incident, in which he entered the Whole Foods Market (WFM) in Austin, Texas, ordered two tacos valued at $6.00 at a computer kiosk, picked up his order at an adjacent counter, and left the store without paying for them. IAF, Tab 26, Initial Decision (ID) at 2. A store loss prevention officer (LPO) confronted the appellant and escorted him inside to pay for the tacos. ID at 2-3. At the cash register, the appellant took out his Marshal's credential case, which he was using as a wallet, the LPO detained the appellant, directed him to the loss prevention security office (security office), and notified the Austin Police Department (APD) of the incident. ID at 2-3; IAF, Tab 4 at 108. The LPO was joined by other security personnel, and one stood guard over the appellant during the following hour while he was detained. ID at 3; IAF, Tab 4 at 204-06, 209-10, 238-39. When the APD failed to respond after an hour, the appellant signed a statement admitting to wrongfully depriving WFM of its property, and he was released. ID at 3. WFM declined to prosecute. *Id.* The APD reported the incident as "Theft by Shoplifting" and referred the matter to the agency's U.S.

Marshals Service Office of Professional Responsibility-Internal Affairs (OPR-IA). *Id.* Much of the appellant's behavior at WFM, as well as his detention in the loss prevention office, is captured on store security video. ID at 5-6, 16.

OPR-IA conducted an investigation, during which the appellant and the WFM LPO were interviewed under oath. IAF, Tab 4 at 123-24, 200, 219. During his June 30, 2015 OPR-IA interview, the appellant claimed that he took the tacos without paying for them because they were complementary ("comped"), that he signed the February 11, 2015 statement admitting to the dishonest conduct under duress, and that the security personnel's aggressive treatment of him prevented him from explaining that the tacos were comped. *Id.* at 225-27, 234-37, 256, 272-73. The LPO described the appellant's conduct throughout the incident, stated that the appellant did not explain his actions, and asserted that he acted and treated the appellant professionally during his detainment. *Id.* at 211-15, 313-14, Tab 18 at 39-40.

After OPR-IA's investigation, the agency proposed the appellant's removal based on four charges: (1) dishonest conduct for taking the tacos without paying for them; (2) failure to report that he was detained and accused of criminal conduct while on official duty as required by agency policy; (3) failure to follow an agency directive that prohibited the use of his credential case to store personal items, including his cash and driver's license; and (4) lack of candor during a June 30, 2015 OPR-IA investigative interview into his alleged misconduct.[2] IAF, Tab 4 at 107-19. Upon finding that the appellant admitted to charges 2 and 3 and

---

[2] Although the proposed removal referred to the OPR-IA interview as taking place on June 23, 2015, the interview in fact took place on June 30, 2015. IAF, Tab 4 at 62-64, 112, 219. The parties have not alleged that this error was harmful to the appellant and we find that it was not. *See Viana v. Department of the Treasury*, 114 M.S.P.R. 659, ¶ 5 (2010) (finding that an agency's error in its proposal notice as to the date of the alleged misconduct was not harmful because the appellant was on notice of the correct date and had the opportunity to make an informed reply).

that the record supported the remaining two charges and specifications, the deciding official removed the appellant. *Id.* at 11-16.

The appellant filed the instant Board appeal, challenging the merits of his removal and raising an affirmative defense of harmful error. IAF, Tab 1 at 7, 15. He withdrew his request for a hearing. IAF, Tab 15 at 4-6. After the close of the record, the administrative judge issued an initial decision on the parties' submissions, sustaining the removal action. ID at 1-2. She found that the agency proved all of the charges and the underlying specifications; that the appellant failed to prove that the agency committed harmful error in reaching its removal decision; and that the penalty of removal was reasonable and promoted the efficiency of the service. ID at 9-11, 14-16, 19-20, 23-24.

The appellant has filed a petition for review. Petition for Review (PFR) File, Tab 1. The agency has filed a response to the petition for review, to which the appellant has replied. PFR File, Tabs 3-4.

## DISCUSSION OF ARGUMENTS ON REVIEW

On petition for review, the appellant argues that the administrative judge erred in finding that the agency proved the dishonest conduct and lack of candor charges and that the penalty of removal was reasonable. PFR File, Tab 1 at 8-12, 14, Tab 4 at 4, 13-15. Specifically, he reasserts that the tacos were comped; that his February 11, 2015 written statement admitting to the dishonest conduct should not be considered because it was signed under duress; that the statements of the LPO should not be credited over his own; and that the de minimis value of the items taken and the other identified mitigating factors should outweigh the fact that he was a law enforcement officer (LEO). PFR File, Tab 1 at 8-14, Tab 4 at 4-15. For the reasons below, we find that the appellant's contentions do not provide a basis for review.

Because the administrative judge's findings are based on the written record, the Board is free to reweigh the evidence and make its own findings without

deferring to her credibility findings. *See Haebe v. Department of Justice*, 288 F.3d 1288, 1302 (Fed. Cir. 2002) (finding that when an administrative judge's findings are not based on observing witnesses' demeanor, the Board is free to re-weigh the evidence and substitute its own judgment on credibility issues). We have reviewed the record evidence, but nonetheless find that the administrative judge properly weighed the evidence, considering such factors as the inconsistency of the appellant's statements, the inherent improbability of his claims, the LPO's opportunity and capacity to observe the incident, and the consistency of the LPO's statements with the other evidence in the record. ID at 7-9, 13-15; *see Hillen v. Department of the Army*, 35 M.S.P.R. 453, 458 (1987) (finding a number of factors relevant to credibility determinations, including a witness's opportunity and capacity to observe the event in question, any prior inconsistent statements by a witness, evidence which contradicts or is consistent with a witness's version, and the inherent improbability of a witness's version).

<u>The administrative judge correctly sustained the charge of dishonest conduct.</u>

As stated by the administrative judge, to sustain a charge of dishonest conduct, the agency must prove intent to deceive. *Vilt v. U.S. Marshals Service, Department of Justice*, 16 M.S.P.R. 192, 199 (1983). Intent to deceive or mislead may be established by circumstantial evidence or inferred. *Id.*; *see Boo v. Department of Homeland Security*, 122 M.S.P.R. 100, ¶ 10 (2014) (discussing intent in the context of a charge of misrepresentation). In determining whether the requisite intent exists, the totality of the circumstances must be considered, including the appellant's plausible explanations. *Boo*, 122 M.S.P.R. 100, ¶ 10.

In finding that the appellant intended to take the tacos without paying for them, the administrative judge relied on the appellant's written statement from February 11, 2015, in which he "voluntarily state[d] and admit[ted], without force or threats of any kind," to taking the tacos "without making payment or having the owner's consent." ID at 6; IAF, Tab 4 at 147. On review, the appellant argues, as below, that the statement should not be considered because he signed it

under duress. PFR File, Tab 1 at 13; IAF, Tab 19 at 28-29. He claims that the LPO treated him aggressively by pushing him in the back and "snatching" his credentials from his hands, and that the LPOs detained him "against his will." PFR File, Tab 1 at 4, 13; IAF, Tab 4 at 233, 256, Tab 19 at 28-29.

The administrative judge determined that the security personnel were not aggressive with the appellant, and we agree with this finding. ID at 15-16. Like the administrative judge, we credit the LPO's assertion that he acted professionally over the appellant's claims of mistreatment.[3] *Id*.; IAF, Tab 18 at 39. The LPO consistently described his encounter with the appellant over the course of two OPR-IA interviews and in a written statement he provided to the agency. IAF, Tab 4 at 208-14, 309, 313-15, 321-22, Tab 18 at 39. The appellant, on the other hand, made a number of statements that were inconsistent with each other and the video evidence, as discussed further below in connection with the lack of candor charge. Moreover, it is unlikely that the appellant would not understand the impact of the statement, given his LEO experience. *See Cooper v. U.S. Postal Service*, 42 M.S.P.R. 174, 179 n.2 (1989) (finding that the appellant was not likely susceptible to being tricked into an admission, given his 15 years of experience in law enforcement), *aff'd per curiam*, 904 F.2d 46 (Fed. Cir. 1990) (Table).

In finding that WFM did not comp the appellant's tacos, as he claimed, the administrative judge considered the security video from WFM and the LPO's statements. ID at 5-9. She relied on the LPO's statement to OPR-IA that he observed the entirety of the appellant's transaction at the taco bar and that there was no verbal interaction between the appellant and the WFM employee who prepared the tacos. ID at 8; IAF, Tab 4 at 307-08, 310-11. She credited the LPO's assertion that the appellant waited no more than 5 minutes for his food to be prepared, which was confirmed by the time stamp on the receipt and the

---

[3] The LPO confirmed that the appellant was not free to leave because the security team had called and was waiting for the APD. IAF, Tab 4 at 322. We decline to find that the appellant's detention coerced him into falsely admitting that he took the tacos.

surveillance video. ID at 7; IAF, Tab 4 at 146, Tab 9, Surveillance Camera Recording (150211 Suspect going towards middle aisle.avi) at 00:25. Moreover, according to the LPO, the appellant acted suspiciously after retrieving the tacos. IAF, Tab 4 at 307-08. The LPO also observed that the appellant's receipt was marked unpaid and did not contain the notation normally included on the receipt of an item provided free of charge. ID at 7-8; IAF, Tab 4 at 146, 311-12.

The appellant has shown no error in the administrative judge's decision not to credit his later statements that the tacos were comped because the statements were inconsistent with each other. ID at 6-7, 9; PFR File, Tab 1 at 2-4, 6, 9. In his OPR-IA interview, the appellant asserted that he told the security personnel at the time that the tacos were comped. IAF, Tab 4 at 263-64. However, in his March 22, 2016 declaration responding to his proposed removal, he stated that he "did not believe the value of the tacos was worth the trouble or hassle of trying to explain" that they were comped. *Id.* at 94. Those statements are also contradicted by the appellant's verbal concession to the security personnel while in the security office at WFM that "there [] [was] no excuse" for his actions, as well as his February 11, 2015 written statement that he took the tacos without WFM's consent and without paying for them. IAF, Tab 4 at 147, 168. The administrative judge therefore found that the appellant did not explain his having comped merchandise until his OPR-IA interview and that it was inherently improbable he would delay making such a claim if it were true. ID at 8-9.

We find that the administrative judge correctly found that the appellant's proffered reason for taking the tacos was not credible and that he intended to take them without paying for them. *See Hanker v. Department of the Treasury*, 73 M.S.P.R. 159, 164 (1997) (finding that a failure to disclose information in response to a question on a Standard Form 86, coupled with a lack of plausible explanation for that failure, warranted an inference of an intent to deceive). The appellant's arguments otherwise constitute mere disagreement with the administrative judge's findings. *Crosby v. U.S. Postal Service*, 74 M.S.P.R. 98,

105-06 (1997) (finding no reason to disturb the administrative judge's findings when she considered the evidence as a whole, drew appropriate inferences, and made reasoned conclusions on issues of credibility); *Broughton v. Department of Health and Human Services*, 33 M.S.P.R. 357, 359 (1987) (same). Accordingly, we agree with the administrative judge that the agency proved the appellant took the tacos from WFM with the intent to deceive.

<u>The administrative judge correctly sustained the lack of candor charge.</u>

A lack of candor charge requires proof of the following elements: (1) that the employee gave incorrect or incomplete information; and (2) that he did so knowingly. *Fargnoli v. Department of Commerce*, 123 M.S.P.R. 330, ¶ 17 (2016). The administrative judge found that the agency proved that the appellant made two incorrect statements in his sworn OPR-IA interview. ID at 11-16. Those statements were that the security personnel prevented the appellant from explaining that his tacos were comped and that they were "yelling and throwing paper and pens at [him]." IAF, Tab 4 at 13-14, 77-79. The administrative judge further determined that the appellant knew that the first statement was incorrect, but made no similar finding regarding the second statement. ID at 14-16. She nonetheless sustained both specifications of the agency's lack of candor charge. *Id.*

Regarding the first specification, the administrative judge found that the appellant had ample opportunity to fully explain his actions when he was confronted by the LPO in the parking garage and at the register. ID at 12. She further found that the video evidence revealed that the appellant had the opportunity to explain his actions while in the security office, but failed to do so. ID at 13. While the appellant was in the office, he discussed the APD's involvement, his need to make a phone call, and he asked for water. IAF, Tab 4 at 239, 248, 261-63. Also, rather than remain "silen[t] at the back end of the interview," as he claims on review, PFR File, Tab 5 at 14, the appellant asserted, without any prompting from the security personnel present, "I ain't trying to

steal," IAF, Tab 4 at 162; but, he again failed to further explain his conduct, even after being asked directly why he did not pay for the tacos, *id.*, at 168. To the extent the security office video did not capture the entirety of the incident, as the appellant alleges, PFR File, Tab 1 at 13, Tab 4 at 14, the LPO's statements to the OPR-IA confirm that the appellant did not "offer any excuses" for taking the tacos without paying for them or otherwise state that they were comped. IAF, Tab 4 at 208-09, 211, 313-14, 321-22.

As for the second specification, the administrative judge found that the evidence refuted the appellant's claims that the security personnel yelled and threw paper and a pen at him. ID at 15-16. In making this finding, she relied on the video of the appellant in the security office and the LPO's statements. ID at 16. The LPO denied pushing, using any inappropriate language toward, or throwing a pen and paper at the appellant. IAF, Tab 4 at 313-14, Tab 18 at 39-40. The video evidence generally supports the LPO's statements, even if it did not capture every aspect of the encounter. We discern no error in this finding. *See Hillen,* 35 M.S.P.R. at 458. Moreover, we find that the appellant's description of the encounter shifted over time, from stating in his OPR-IA interview that the security personnel were not physically aggressive, to claiming in the same interview that they threw a pen at him, to asserting in his March 22, 2015 declaration that one of them "tossed a pen and paper" at him. IAF, Tab 4 at 94, 239, 272, 288-89.

As explained above and highlighted by the administrative judge, the appellant's shifting explanations during his OPR-IA interview and across his subsequent statements are sufficiently distinct to allow for an inference that the appellant knowingly mischaracterized the incident, as charged in specifications 1 and 2. ID at 12-16; *see Boo,* 122 M.S.P.R. 100, ¶ 10 (explaining that intent to mislead may be inferred when the misrepresentation is made with a reckless disregard for the truth or with conscious purpose to avoid learning the truth). Thus, the administrative judge's failure to explicitly find the appellant knowingly

gave incorrect or incomplete information as charged in specification 2 did not affect the appellant's substantive rights. *See Panter v. Department of the Air Force*, 22 M.S.P.R. 281, 282 (1984) (finding that adjudicatory error that is not prejudicial to a party's substantive rights provides no basis for reversal of an initial decision). Additionally, because the agency proved that the appellant took the tacos with the intent to deceive, it follows that his attempts to deny doing so lacked candor. *Ludlum v. Department of Justice*, 278 F.3d 1280, 1283-85 (Fed. Cir. 2002) (approving of the Board's finding that when an underlying misconduct charge has been proven, a lack of candor charge based on an appellant's failure to respond truthfully or completely when questioned about matters relating to the proven misconduct also must be sustained). Thus, we agree with the administrative judge that the appellant's statements to repudiate his prior admissions, made during the OPR-IA investigation, also lacked candor. We therefore find that the administrative judge correctly sustained the lack of candor charge and the supporting specifications.

<u>The administrative judge properly deferred to the agency's chosen penalty.</u>

When all of the agency's charges are sustained, the Board will modify or mitigate an agency-imposed penalty only if it finds the agency failed to weigh the relevant factors or the penalty clearly exceeds the bounds of reasonableness. *See Ellis v. Department of Defense*, 114 M.S.P.R. 407, ¶ 11 (2010). The administrative judge found that the deciding official considered the relevant mitigating factors and deferred to her selection of removal as a reasonable penalty. ID at 23. We agree.

On review, the appellant claims that the administrative judge ignored or gave insufficient weight to the mitigating factors of his lack of prior discipline, length of Federal civilian service, positive work history, multiple character letters, decorated military history, and the $6.00 value of the tacos. PFR File, Tab 1 at 9, Tab 4 at 9. As for his rehabilitation potential, the appellant argues that he was experiencing transient stress due to a divorce. PFR File, Tab 4 at 9.

He also appears to assert that the nature and seriousness of his conduct did not warrant removal, given that "he did not gain control over the tacos as a direct result of his job responsibilities," WFM did not file criminal charges against him, APD declined to report to the scene, and he voluntarily returned to the store to pay for the items.  *Id.*  He further claims that the table of penalties for dishonest conduct "provides a lesser penalty than removal on the first offense."  *Id.*  The administrative judge addressed these claims.  ID at 21-23.  We agree with her finding that the deciding official appropriately considered these factors.  ID at 21-23; *compare* PFR File, Tab 4 at 9, *with* IAF, Tab 4 at 14-15, 80-83, Tab 18 at 53-59.  The appellant's disagreement with the weight the deciding official gave to particular factors does not provide a basis for reversing the initial decision.  *Ellis*, 114 M.S.P.R. 407, ¶ 11.

The appellant argues for the first time on review that the penalty of removal should be mitigated because the agency permitted him to continue working for 3 months after proposing his removal.  IAF, Tab 4 at 68, 129; PFR File, Tab 1 at 9.  Because he did not raise this argument below, we decline to consider it on review.  *Banks v. Department of the Air Force*, 4 M.S.P.R. 268, 271 (1980) (explaining that the Board will not consider an argument raised for the first time in a petition for review absent a showing that it is based on new and material evidence not previously available despite the party's due diligence).

The appellant argues that the de minimis value of the goods involved is an appropriate factor for the Board to consider in its penalty review.  PFR File, Tab 1 at 8-14, Tab 4 at 4-13.  We agree.  *See, e.g.*, *Miguel v. Department of the Army*, 727 F.2d 1081, 1084 (Fed. Cir. 1984); *McGowan v. Department of the Air Force*, 28 M.S.P.R. 314, 318 (1985).  Nevertheless, even in cases in which the value of stolen goods was minimal, the Board's penalty analysis must account for all of the relevant factors.  *Mallery v. U.S. Postal Service*, 41 M.S.P.R. 288, 292 (1989).  In this regard, we observe that the Board recently mitigated the removal of an employee who stole food from an agency cafeteria, and it considered the de

minimis nature of the theft in its penalty analysis. *Chin v. Department of Defense*, 2022 MSPB 34, ¶¶ 25, 27.

However, notwithstanding the similarities between these two acts of theft, there are aggravating factors present in the instant appeal that were not present in *Chin*, and we find that the de minimis nature of the theft does not outweigh those factors. Unlike the appellant in *Chin*, the appellant in the instant appeal was an LEO, and it is well established that LEOs are held to a higher standard of honesty and integrity. *Prather v. Department of Justice*, 117 M.S.P.R. 137, ¶ 36 (2011); *see also O'Lague v. Department of Veterans Affairs*, 123 M.S.P.R. 340, ¶ 20 (2016) (sustaining the penalty of removal for a police officer for sleeping on duty and falsification, observing that the Board has frequently upheld the removal penalty for falsification and that LEOs may be held to a higher standard of conduct than other Federal employees), *aff'd per curiam*, 698 F. App'x 1034 (Fed. Cir. 2017); *Wayne v. Department of the Navy*, 55 M.S.P.R. 322, 330 (1992) (finding that removal was appropriate for falsification, particularly in light of the appellant's position as a security guard). We agree with the administrative judge that this appeal is similar to *Cooper*, 42 M.S.P.R. at 180-81, in which the Board declined to mitigate an LEO's removal for shoplifting despite his 35 years of Federal service, lack of prior discipline, and the relatively minimal value of the items stolen. ID at 23.

Moreover, unlike the appellant in *Chin*, the appellant in this case was not removed for the act of theft alone but also for other misconduct surrounding this same event, including failure to report the matter to the agency, storing his driver's license in his credential case,[4] and lack of candor in the ensuing investigation. IAF, Tab 4 at 107-19. These additional sustained charges are arguably more serious than the dishonest conduct charge itself. For example, under the agency's table of penalties, the lack of candor charge carries a

---

[4] Even if the appellant did not intend to misuse his position by showing his badge to the WFM employees, his actions, at a minimum, created an appearance that he was attempting to do so.

maximum penalty of removal for a first offense. IAF, Tab 4 at 332. For these reasons, we agree with the administrative judge that the agency's penalty decision was reasonable and entitled to deference.

Accordingly, we affirm the initial decision, which sustained the appellant's removal.

### NOTICE OF APPEAL RIGHTS[5]

You may obtain review of this final decision. 5 U.S.C. § 7703(a)(1). By statute, the nature of your claims determines the time limit for seeking such review and the appropriate forum with which to file. 5 U.S.C. § 7703(b). Although we offer the following summary of available appeal rights, the Merit Systems Protection Board does not provide legal advice on which option is most appropriate for your situation and the rights described below do not represent a statement of how courts will rule regarding which cases fall within their jurisdiction. If you wish to seek review of this final decision, you should immediately review the law applicable to your claims and carefully follow all filing time limits and requirements. Failure to file within the applicable time limit may result in the dismissal of your case by your chosen forum.

Please read carefully each of the three main possible choices of review below to decide which one applies to your particular case. If you have questions about whether a particular forum is the appropriate one to review your case, you should contact that forum for more information.

**(1) Judicial review in general**. As a general rule, an appellant seeking judicial review of a final Board order must file a petition for review with the U.S. Court of Appeals for the Federal Circuit, which must be received by the court within **60 calendar days** of the date of issuance of this decision. 5 U.S.C. § 7703(b)(1)(A).

---

[5] Since the issuance of the initial decision in this matter, the Board may have updated the notice of review rights included in final decisions. As indicated in the notice, the Board cannot advise which option is most appropriate in any matter.

If you submit a petition for review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C.  20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit.  The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

**(2) Judicial or EEOC review of cases involving a claim of discrimination**.  This option applies to you only if you have claimed that you were affected by an action that is appealable to the Board and that such action was based, in whole or in part, on unlawful discrimination.  If so, you may obtain judicial review of this decision—including a disposition of your discrimination claims—by filing a civil action with an appropriate U.S. district court (*not* the U.S. Court of Appeals for the Federal Circuit), within **30 calendar days** after you receive this decision.  5 U.S.C. § 7703(b)(2); *see Perry v. Merit Systems Protection Board*, 582 U.S. 420 (2017).  If you have a representative in this case, and your representative receives this decision before you do, then you must file with the district court no later than **30 calendar days** after your representative receives this decision.  If the action involves a claim of discrimination based on

race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security. *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.

Contact information for U.S. district courts can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

Alternatively, you may request review by the Equal Employment Opportunity Commission (EEOC) of your discrimination claims only, excluding all other issues. 5 U.S.C. § 7702(b)(1). You must file any such request with the EEOC's Office of Federal Operations within **30 calendar days** after you receive this decision. 5 U.S.C. § 7702(b)(1). If you have a representative in this case, and your representative receives this decision before you do, then you must file with the EEOC no later than **30 calendar days** after your representative receives this decision.

If you submit a request for review to the EEOC by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C. 20013

If you submit a request for review to the EEOC via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, N.E.
Suite 5SW12G
Washington, D.C. 20507

**(3) Judicial review pursuant to the Whistleblower Protection Enhancement Act of 2012**. This option applies to you only if you have raised claims of reprisal for whistleblowing disclosures under 5 U.S.C. § 2302(b)(8) or

other protected activities listed in 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D). If so, and your judicial petition for review "raises no challenge to the Board's disposition of allegations of a prohibited personnel practice described in section 2302(b) other than practices described in section 2302(b)(8), or 2302(b) (9)(A)(i), (B), (C), or (D)," then you may file a petition for judicial review either with the U.S. Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction.[6] The court of appeals must <u>receive</u> your petition for review within **60 days** of <u>the date of issuance</u> of this decision. 5 U.S.C. § 7703(b)(1)(B).

If you submit a petition for judicial review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

> U.S. Court of Appeals
> for the Federal Circuit
> 717 Madison Place, N.W.
> Washington, D.C. 20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The

---

[6] The original statutory provision that provided for judicial review of certain whistleblower claims by any court of appeals of competent jurisdiction expired on December 27, 2017. The All Circuit Review Act, signed into law by the President on July 7, 2018, permanently allows appellants to file petitions for judicial review of MSPB decisions in certain whistleblower reprisal cases with the U.S. Court of Appeals for the Federal Circuit or any other circuit court of appeals of competent jurisdiction. The All Circuit Review Act is retroactive to November 26, 2017. Pub. L. No. 115-195, 132 Stat. 1510.

Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

Contact information for the courts of appeals can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.


FOR THE BOARD:          *Gina K. Grippando*
                        _____
                        Gina K. Grippando
                        Clerk of the Board

Washington, D.C.