# UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD

NATACHA LAMOUR,
      Appellant,

     v.

DEPARTMENT OF HOMELAND
   SECURITY,
      Agency.

DOCKET NUMBER
AT-0752-23-0067-I-1

DATE: August 26, 2024

# THIS ORDER IS NONPRECEDENTIAL[1]

<u>Thomas Tierney</u>, Esquire, Norwalk, Connecticut, for the appellant.

<u>Kenneth William</u>, Atlanta, Georgia, for the agency.

### BEFORE

Cathy A. Harris, Chairman
Raymond A. Limon, Vice Chairman
Henry J. Kerner, Member*

*Member Kerner did not participate in the adjudication of this appeal.

### REMAND ORDER

¶1     The appellant has filed a petition for review of the initial decision, which affirmed her removal. For the reasons discussed below, we GRANT the appellant's petition for review, VACATE the initial decision, and REMAND the

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

case to the regional office for further adjudication in accordance with this Remand Order.

## BACKGROUND

¶2 The appellant most recently held the GS-14 position of Supervisory Immigration Services Officer. Initial Appeal File (IAF), Tab 5 at 13. In June 2022, the agency proposed her removal based on three charges. IAF, Tab 8 at 5. The first charge was failure to follow supervisory instructions, and it included 21 specifications. *Id.* at 5-14. Most alleged that she was instructed, in January 2021, to stop sending unencrypted emails with sensitive information to her personal email account, but she continued to do so on numerous occasions between February and July 2021. *Id.* at 5-13. A handful of other specifications alleged that she was instructed, in April 2022, to copy her supervisor on all future emails, but the appellant did not do so on several occasions between April and May 2022. *Id.* at 13-14. The second charge in the proposed removal was failure to follow policy, and it included four specifications. *Id.* at 15-16. Three concerned other emails containing sensitive information that the appellant sent to her personal email address between August 2020 and January 2021, contrary to agency policy, and the fourth specification concerned the appellant making a copy of her work credential in March 2021. *Id.* The third and final charge in the proposed removal was neglect of duty, and it included two specifications. *Id.* at 17-18. One alleged that the appellant sent yet another email with sensitive information to her personal account, in August 2020, when she reportedly intended to send it to a different email address within the agency. *Id.* at 17. The other specification alleged that the appellant failed to maintain her access to several agency systems due to inactivity for a period between April and July 2021. *Id.* at 17-18.

¶3 After the appellant responded to the proposal, the deciding official issued an October 2022 decision sustaining all the allegations and imposing the removal

action. IAF, Tab 5 at 15-21. The appellant filed the instant appeal challenging her removal. IAF, Tab 1.

¶4 The administrative judge developed the record and held the requested hearing before affirming the appellant's removal. IAF, Tab 57, Initial Decision (ID). He found that the agency proved each specification under each charge, based largely on the appellant's admissions about underlying facts.[2] ID at 3-13. The administrative judge next found that the appellant did not prove her claims of race discrimination, ID at 13-16, or reprisal for engaging in equal employment opportunity (EEO) activity, ID at 16-17. Lastly, the administrative judge found that the agency met its burden regarding nexus and the reasonableness of its penalty. ID at 17-19.

¶5 The appellant filed a petition for review. Petition for Review (PFR) File, Tab 3. The agency filed a response to the appellant's petition for review, PFR File, Tab 12, and the appellant filed a reply, PFR File, Tab 16.

## DISCUSSION OF ARGUMENTS ON REVIEW

¶6 In her petition for review, the appellant does not dispute the charges or the administrative judge's findings about the same. She does, however, present several arguments about her affirmative defenses, PFR File, Tab 3 at 5-19, and the penalty, *id*. at 19-21. The appellant also argues that the administrative judge exhibited bias. *Id*. at 21-27.

---

[2] Rather than dispute the facts underlying her removal, the appellant provided explanations for why she engaged in the conduct. For example, she indicated that she sent most of the offending emails to secure documentation because she anticipated unwarranted discipline from her new supervisor who had engaged in a pattern of harassment of the appellant and others. ID at 8, 10; IAF, Tab 6 at 6-9, 14-21; Hearing Transcript at 199-205 (testimony of the appellant). The appellant further described nearly 20 years of successful service before the commencement of this pattern of harassment, which led to her counseling through the Employee Assistance Program, numerous unanswered complaints about her supervisor, an extended leave of absence, medical treatment, and a request for transfer. IAF, Tab 6 at 6-9, 14-21.

## The administrative judge must further adjudicate the appellant's discrimination claims.

¶7        The appellant's discrimination affirmative defense primarily concerns the actions of her direct supervisor, who held the position of Field Office Director. IAF, Tab 46 at 4-6.  In her prehearing submission, the appellant stated that the Field Office Director created a hostile and toxic work environment based on the appellant's race and ethnicity, which is Haitian.  *Id.* at 5.  The appellant alleged that the Field Office Director targeted individuals who were not Black and told the appellant that she "wasn't [B]lack enough" because the appellant would not assist in her discrimination against non-Black employees.  *Id.*  The appellant further alleged that the Field Office Director was "a racist bully who hated all other races besides her own, which was African American."  *Id.*  She then reiterated by stating that this individual "hated Caucasians, Asians, Hispanics, and ever[y] other [B]lack employee[] who [was] not of African descent."  *Id.*

¶8        Just a couple of weeks after the appellant made these allegations, the administrative judge held a prehearing conference.  The associated summary stated that the appellant was only raising claims of race discrimination and EEO reprisal.  IAF, Tab 53.  The prehearing conference summary made no mention of color, ethnicity, or national origin.  *Id.*  It does not state that the parties had discussed the particulars of the appellant's discrimination allegations, and it does not state that the appellant had abandoned any of them.  *Id.*

¶9        Though given the opportunity to object to the prehearing conference summary, the appellant did not do so.  Hearing Transcript (HT) at 5-6. Nevertheless, the appellant and the agency both elicited hearing testimony about the nuanced allegations described above.  For example, the appellant's representative elicited testimony from the appellant about how the Field Office Director constantly made racist comments about employees who were not Black, described the appellant as not Black enough, and made fun of the appellant's Haitian accent with another employee.  HT at 178-79, 180-81, 185, 189

(testimony of the appellant). Agency counsel cross-examined the appellant about the same. HT at 216-17 (testimony of the appellant). Both parties also elicited testimony about these and other allegations of discrimination from the Field Office Director, who denied any wrongdoing, including any discrimination based on an individual's Haitian descent. HT at 29-30, 48-59 (testimony of the Field Office Director).

¶10    The parties separately elicited testimony from three other employees who characterized themselves as victims of or witnesses to the Field Office Director's discrimination and other abuse. To illustrate, one described his time working as a Section Chief for the Field Office Director as the worst experience in his 25 years of service. HT at 122 (testimony of first coworker). Some of the "hostile" behavior he reported including her screaming at employees, calling individuals who were not Black "slave master," and making other racially divisive comments "all the time." HT at 123, 126-27. This coworker stated that "everything with [the Field Office Director] is race," and he agreed to a demotion to get away from the situation. HT at 123-24, 127.

¶11    A second coworker of the appellant also testified, describing the Field Office Director's leadership style as that of a "dictator," and describing the work environment she created as "toxic." HT at 143, 145 (testimony of second coworker). This individual similarly testified that he left his job as Section Chief under the Field Office Director for these reasons, while further suggesting that it had negatively impacted his health and well-being. HT at 145-47. He was less certain about whether the Field Office Director's toxic behavior stemmed from discriminatory animus. HT at 148-49.

¶12    Finally, a third coworker of the appellant, who held the position of Supervisory Immigration Services Officer, described the Field Office Director as "hostile." HT at 160-63 (testimony of third coworker). He indicated that it sometimes appeared as if the Field Office Director's actions were discriminatory towards White employees. HT at 163-64, 174. This individual described how the

Field Office Director's behavior negatively impacted his health and well-being, and he described how the appellant relayed the same about her health and well-being.  HT at 165-66.  This witness, like the others, described the situation as contributing to his leaving the job.  HT at 166-67.

¶13       In the initial decision, the administrative judge stated that the appellant had not alleged that the Field Office Director exhibited discriminatory behavior towards employees of Haitian descent or the existence of a hostile work environment based on national origin.  ID at 15 n.4.  We disagree.  While most of the allegations and testimony seemed to implicate race or color, some implicated the appellant's national origin, as described above.

¶14       The Board has identified several nonexhaustive factors to consider when determining whether an administrative judge erred in not addressing an appellant's affirmative defenses such that remand is necessary.  Among the relevant factors are:  (1) the thoroughness and clarity with which the appellant raised an affirmative defense; (2) the degree to which the appellant continued to pursue the affirmative defense in the proceedings below after initially raising it; (3) whether the appellant objected to a summary of the issues to be decided that failed to include the potential affirmative defense when specifically afforded an opportunity to object and the consequences of the failure were made clear; (4) whether the appellant raised the affirmative defense or the administrative judge's processing of the affirmative defense claim in the petition for review; (5) whether the appellant was represented during the course of the appeal before the administrative judge and on petition for review, and if not, the level of knowledge of Board proceedings possessed by the appellant; and (6) the likelihood that the presumptive abandonment of the affirmative defense was the product of confusion, or misleading or incorrect information provided by the agency or the Board.  *Thurman v. U.S. Postal Service*, 2022 MSPB 21, ¶ 18.

¶15       Most of these factors tend to support the conclusion that remand is required in this case.  The only ones that could weigh otherwise are the third and fifth

factors, because the appellant was represented by an attorney and did not object to the prehearing summary identifying race discrimination as the only type of discrimination alleged. However, consistent with the sixth factor, it seems quite likely that the failure to object to the prehearing conference summary was nothing more than the product of confusion. In many contexts, there is a blurring of the lines between some forms of discrimination, and that appears to be the case here. *See generally Salas v. Wisconsin Department of Corrections*, 493 F.3d 913, 923 (7th Cir. 2007) (recognizing that "[i]n the federal courts, there is uncertainty about what constitutes race versus national origin discrimination under Title VII," and finding that an individual who identifies himself as Hispanic without describing a national origin could nevertheless pursue a claim of discrimination based on national origin); *Deravin v. Kerik*, 335 F.3d 195, 202 (2d Cir. 2003) (finding that "racial categories may overlap significantly with nationality or ethnicity," such that "the line between discrimination on account of race and discrimination on account of national origin may be so thin as to be indiscernible") (internal quotes omitted); *Complainant v. Brennan*, Equal Employment Opportunity Commission (EEOC) Appeal No. 0120151208, 2015 WL 3955326, at *1 & n.1 (June 19, 2015) (recognizing that a complainant alleged discrimination based on "race (Mexican)" and indicating that, "[w]hile the EEOC views Mexican to constitute a national origin and not a race, [the EEOC would] accept the definition as provided by [c]omplainant"); EEOC Enforcement Guidance on National Origin Discrimination, EEOC Notice No. 915.005, § II.C.1 (Nov. 18, 2016), https://www.eeoc.gov/laws/guidance/eeoc-enforcement-guidance-national-origin-discrimination ("National origin discrimination often overlaps with race, color, or religious discrimination because a national origin group may be associated or perceived to be associated with a particular religion or race."); EEOC Compliance Manual, § 2-II.A.1.b, 2009 WL 2966754 (Aug. 6, 2009) ("National origin discrimination includes discrimination based on place of origin or on the physical, cultural, or linguistic characteristics of a national origin

group. Sometimes, national origin discrimination overlaps with race discrimination, and in such cases, the basis of discrimination can be categorized as both race and national origin.").

¶16    Once again, the appellant unambiguously described herself as Haitian, and she described the Field Office Director as an African American who had, inter alia, made fun of the appellant's Haitian accent. She also described the Field Office Director as hating "Caucasians, Asians, Hispanics, and ever[y] other [B]lack employee[] who [was] not of African descent." IAF, Tab 46 at 5. In the absence of an explicit abandonment of these and other similar allegations, it is understandable that the appellant and her attorney did not recognize the administrative judge's prehearing summary as omitting any of these claims. One can easily understand how the prehearing summary's reference to "race discrimination" might have been interpreted as shorthand for the appellant's more detailed allegations that implicated race, color, ethnicity, and national origin. Plus, the initial decision seems to suggest that the administrative judge simply overlooked some of those allegations, rather than purposefully deciding that they were abandoned. ID at 15 n.4.

¶17    Looking beyond any distinction between race, color, ethnicity, and national origin, there are other reasons why the appellant's discrimination claim requires remand. Within the initial decision, the administrative judge did not make credibility findings about the conflicting hearing testimony[3] and whether the discriminatory behavior alleged throughout this appeal occurred. ID at 14-15. The administrative judge stated that any racially based hostile work environment

---

[3] In addition to hearing testimony, the record includes other evidence about the issue. For example, the Field Office Director sat for a deposition in which she indicated that she believed the appellant was born in Haiti, but denied that she had any problem with that and denied that she told the appellant that the appellant was not Black enough. IAF, Tab 48 at 176-77. On the other hand, a sworn written statement from one of the testifying witnesses describes how the Field Office Director routinely engaged in erratic bullying behavior, much of which was explicitly tied to individuals' race or heritage, all of which led to him agreeing to a demotion to leave the office after more than 20 years of service. IAF, Tab 46 at 13-16.

created by the Field Office Director was not directed at the appellant or other Black employees, and that the appellant did not maintain otherwise during her hearing testimony. ID at 15. But, as alluded to previously, the hearing transcript reflects otherwise. Among other things, the appellant testified that the Field Office Director described the appellant as "not Black enough" because the appellant would not help her harass a White peer. HT at 185 (testimony of the appellant). Thus, the appellant did allege that she was subject to discriminatory behavior, and it is necessary to make credibility findings about the same. The administrative judge is in the best position to make those credibility findings. *Mastrullo v. Department of Labor*, 123 M.S.P.R. 110, ¶ 27 (2015).

¶18     While denying the appellant's discrimination affirmative defense, the administrative judge also cited another rationale with which we disagree. He concluded that the Field Office Director gave uncontroverted testimony that she was not involved in proposing or effecting the appellant's removal. ID at 15. However, the Field Office Director was the appellant's direct supervisor. She was the supervisor who gave the instructions that the appellant failed to follow, the individual who referred the appellant's misconduct to others for investigation, and a witness for purposes of the associated investigation that led to the appellant's removal. IAF, Tab 8 at 5, Tab 48 at 174-75. Although the administrative judge should have considered this, he did not. *See Naval Station Norfolk-Hearing 2 v. Department of the Navy*, 123 M.S.P.R. 144, ¶ 30 (2016) (recognizing that an individual's role in the decision-making process that leads to an adverse action cannot be ignored in considering a claim of discrimination). For all these reasons, we must remand the appellant's discrimination claim for further adjudication. On remand, the administrative judge should address whether, among other methods like direct evidence, this case involves a "convincing mosaic" of circumstantial evidence of discrimination consisting of "suspicious timing, ambiguous statements oral or written, behavior toward or comments directed at other employees in the protected group, and other bits and

pieces from which an inference of discriminatory intent might be drawn." *Wilson v. Small Business Administration*, 2024 MSPB 3, ¶ 12.

<u>The administrative judge must further adjudicate the appellant's EEO reprisal claim.</u>

¶19     In her petition for review, the appellant also presents arguments about her EEO reprisal claim.  PFR File, Tab 3 at 14-19.  As recognized in the initial decision, this claim primarily concerned the appellant's own EEO complaints about her supervisor, i.e., the Field Office Director, along with the appellant's alleged support for a peer who had previously complained about the Field Office Director.  ID at 16; IAF, Tab 46 at 6, 13-16.  The administrative judge found that the deciding official in the appellant's removal was aware of the appellant's participation in her peer's complaint, but that the deciding official testified that she was unaware of the appellant's own more recent complaint.  ID at 17.  He further found that even if she was aware, this knowledge was insufficient to prove by preponderant evidence that the appellant's prior protected EEO activity was a motivating factor in the appellant's removal.  *Id.*

¶20     The appellant argues on review that this conclusion should be vacated for two reasons.  First, she argues that there was reason to question the deciding official's credibility because the deciding official provided conflicting testimony about whether she had ever received complaints about the Field Office Director's harassment, yet the administrative judge made no credibility findings regarding her testimony.  PFR File, Tab 3 at 14-18 (referencing HT at 92-98 (testimony of the deciding official)).  Second, the appellant correctly notes that the administrative judge improperly focused all of his attention on the deciding official, without considering the degree to which the appellant's supervisor, i.e., the Field Office Director who was implicated by the EEO activity, influenced the removal action.  *Id.*

¶21     We agree that these allegations require further adjudication.  As already discussed, the administrative judge suggested that the Field Office Director, who

was at the center of the alleged discrimination and resulting EEO activity, played no role in the appellant's removal. ID at 15. But that individual played a significant role in the matter. IAF, Tab 8 at 5, Tab 48 at 174-75. Thus, the administrative judge must reconsider the appellant's EEO reprisal claim in this light, making credibility determinations as needed to determine whether the appellant engaged in protected EEO activity that was a motivating factor in or a but for cause of the appellant's removal.

<u>After further adjudicating the appellant's affirmative defenses, the administrative judge must reconsider the reasonableness of the agency's penalty.</u>

¶22    Regarding the reasonableness of the agency's chosen penalty, the appellant once again refers to the discrimination and reprisal she has alleged throughout this appeal. PFR File, Tab 3 at 19-21. The appellant argues that the circumstances caused extreme stress, such that she was on the verge of a nervous breakdown when she engaged in the misconduct underlying her appeal. *Id.* at 19. And, as alluded to previously, the appellant has asserted that almost all of her misconduct was done to secure documentation to protect against the discipline she anticipated by the Field Office Director. IAF, Tab 6 at 6-9, 14-21; HT at 199-205 (testimony of the appellant). According to the appellant, the administrative judge's failure to decide whether the Field Office Director engaged in the types of behavior alleged by the appellant and others prevented the administrative judge from adequately analyzing the penalty. PFR File, Tab 3 at 20-21. In other words, the appellant suggests that the administrative judge must decide whether and to what degree the appellant's working situation was dysfunctional before deciding whether the agency's penalty is reasonable. Under the circumstances, we agree that the administrative judge must consider the nature of the appellant's workplace in addressing the penalty.

¶23    When the agency's charges have been sustained, the Board will review an agency-imposed penalty only to determine if the agency considered all of the relevant factors and exercised management discretion within tolerable limits of

reasonableness. *Chin v. Department of Defense*, 2022 MSPB 34, ¶ 24. The Board will modify a penalty only when it finds that the agency failed to weigh the relevant factors or that the penalty the agency imposed clearly exceeded the bounds of reasonableness. *Id.* However, if the deciding official failed to appropriately consider the relevant factors, the Board need not defer to the agency's penalty determination. *Id.*

¶24 On remand, the administrative judge should first address the appellant's discrimination and EEO reprisal claims. If those claims do not require reversal of the appellant's removal, the administrative judge must reconsider whether the agency has proven the reasonableness of its penalty. Among other things, the administrative judge should decide whether the deciding official appropriately considered mitigating factors identified by the appellant, i.e., the alleged harassment she had endured and her explanation that this was the reason for most of the misconduct underlying her removal.[4] *See Douglas v. Veterans Administration*, 5 M.S.P.R. 280, 332 (1980) (recognizing as relevant to the appropriateness of a penalty mitigating circumstances surrounding the offense, such as unusual job tensions, harassment, or bad faith, malice, or provocation on the part of others involved in the matter).

The appellant has not established that the administrative judge exhibited bias that requires reassignment of this appeal.

¶25 The appellant's final arguments on review are that the administrative judge exhibited bias in favor of the agency throughout this appeal. PFR File, Tab 3 at 21-27. She therefore asks that the Board remand this appeal to a different administrative judge. *Id.* at 28.

¶26 In making a claim of bias or prejudice against an administrative judge, a party must overcome the presumption of honesty and integrity that accompanies

---

[4] The deciding official indicated that she could not conclude that the Field Office Director had engaged in harassment or created a hostile work environment, as alleged by the appellant, but that she nevertheless considered the appellant's assertions of workplace tensions as a mitigating factor. IAF, Tab 5 at 18.

administrative adjudicators. *Oliver v. Department of Transportation*, 1 M.S.P.R. 382, 386 (1980). An administrative judge's conduct during the course of a Board proceeding warrants a new adjudication only if the administrative judge's comments or actions evidence "a deep-seated favoritism or antagonism that would make fair judgment impossible." *Bieber v. Department of the Army*, 287 F.3d 1358, 1362-63 (Fed. Cir. 2002) (quoting *Liteky v. United States*, 510 U.S. 540, 555 (1994)). While we have carefully considered the appellant's allegations of bias, we are not persuaded by this contention. The appellant has correctly identified some errors in the initial decision, for which we are remanding this appeal. But she has not shown that we must remand the appeal to a different administrative judge.

**ORDER**

¶27 For the reasons discussed above, we remand this case to the regional office for further adjudication in accordance with this Remand Order. The appellant's discrimination allegations involved race, color, ethnicity, and national origin, and she presented evidence about the same, all of which the administrative judge did not fully address. On remand, the administrative judge must consider all of these allegations in concert with the applicable legal standards. *See Pridgen v. Office of Management and Budget*, 2022 MSPB 31, ¶¶ 20-25, 30-33 (setting forth the legal standard and analytical framework for claims of Title VII discrimination); *see also Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 754 (1998) (finding that a hostile work environment under Title VII requires a showing of severe or pervasive conduct); *Wilson*, 2024 MSPB 3, ¶¶ 11-19 (setting forth the ways in which an appellant can meet the motivating factor and but for causation standards that apply to Title VII discrimination claims).

¶28 On remand, the administrative judge must also consider the degree to which the Field Office Director played a role in the appellant's removal. He must do so for purposes of the appellant's discrimination claim, as well as her EEO reprisal

claim. *See Pridgen*, 2022 MSPB 31, ¶ 30 (recognizing that claims of retaliation for opposing discrimination in violation of Title VII are analyzed under the same framework used for Title VII discrimination claims).

¶29    Finally, the administrative judge must reconsider the agency's choice of penalty. He should pay particular attention to the appellant's allegations of extensive improprieties throughout her office and the reasons given for her misconduct, which she describes as interrelated, along with the deciding official's consideration of those circumstances.

¶30    The administrative judge should inform the parties of the applicable legal standards regarding the affirmative defenses and the penalty, and he should provide the parties with an opportunity to submit associated arguments. If he deems it necessary, the administrative judge may also hold a supplemental hearing. The administrative judge must then issue a remand initial decision that addresses each of these issues and resolves any questions of credibility. He may incorporate his prior findings about the charges, which the appellant has not disputed on review, if appropriate.[5]

*Gina K. Grippando*

FOR THE BOARD:    _____
                 Gina K. Grippando
                 Clerk of the Board

Washington, D.C.

_____

[5] If the evidence or argument on remand affects the administrative judge's analysis of the merits of the agency's case, he should address that evidence or argument in the remand initial decision. *See Spithaler v. Office of Personnel Management*, 1 M.S.P.R. 587, 589 (1980) (explaining that an initial decision must identify all material issues of fact and law, summarize the evidence, resolve issues of credibility, and include the administrative judge's conclusions of law and his legal reasoning, as well as the authorities on which that reasoning rests).