## UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD

| | |
|---|---|
| DEBORAH ELAINE BRISCOE,<br>Appellant, | DOCKET NUMBER<br>DC-0752-23-0665-I-1 |
| v. | |
| DEPARTMENT OF JUSTICE,<br>Agency. | DATE: November 20, 2025 |

# THIS FINAL ORDER IS NONPRECEDENTIAL[1]

Theresa Kraft, Esquire, and Gilbert Orsini Jr., Esquire, Washington, D.C.,
    for the appellant.

Luke Archer, Esquire, and Kaymi Ross, Esquire, Springfield, Virginia,
    for the agency.

### BEFORE

Henry J. Kerner, Vice Chairman
James J. Woodruff II, Member

### FINAL ORDER

The appellant has filed a petition for review of the initial decision, which sustained her removal. For the reasons discussed below, we GRANT the appellant's petition for review and AFFIRM the initial decision AS MODIFIED to mitigate the removal to a 90-day suspension.

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

## BACKGROUND

The appellant worked as a GS-13 Program Analyst for the Drug Enforcement Administration (DEA). Initial Appeal File (IAF), Tab 5 at 32. Over her 34-year career, the appellant worked at various DEA offices around the world, transferring in December 2021 to the Arlington, Virginia office in order to care for her mother and stepfather, who suffered from serious medical conditions requiring constant care. *Id.* at 78, 408-10. The appellant's official tour of duty was 6:30 a.m. to 3:00 p.m., but her first-line supervisor informally allowed her to telework at the beginning of her day, then arrive at the office later in the day. *Id.* at 78, 413-14; Hearing Recording (HR) (testimony of the appellant, testimony of the appellant's first-line supervisor).[2] According to the appellant, this flexibility was necessary due to her caregiving responsibilities.

In the afternoon of September 19, 2022, the appellant was notified that she had been selected to take a random drug test the following day, i.e., September 20, 2022, between 8:00 a.m. and 9:00 a.m.[3] IAF, Tab 5 at 266, 415-16. That evening, the appellant's second-line supervisor called her, stressing the importance of the random drug test and reiterating that she needed to ensure that she arrived at the office between 8:00 a.m. and 9:00 a.m. *Id.* at 287-92. The

---

[2] To further illustrate the state of affairs, the appellant reported using over 100 hours of family friendly sick leave in 2021, over 200 such hours in 2022, and more than 100 more before her removal in 2023. IAF, Tab 5 at 78-79, Tab 11 at 4-5. Meanwhile, the testimony of the appellant's supervisor reflected frustration over the appellant's schedule. HR (testimony of the appellant's first-line supervisor). She indicated that the appellant was supposed to arrive at 6:30 each morning but never did and essentially made her own schedule. *Id.* The supervisor suggested that this was a frequent topic of conversation, as the appellant always had some excuse for arriving later, oftentimes after lunch. *Id.* She further indicated that she did not "write up" the appellant for this, despite it being a source of frustration, because she was trying to be accommodating. *Id.* The supervisor described making efforts to get the appellant set up with a remote work arrangement but the appellant not following through with those efforts. *Id.*

[3] This was a makeup drug test, as the appellant was on leave when she was first randomly selected for drug testing in August 2022. IAF, Tab 5 at 222. According to the appellant, that leave was scheduled and approved before the drug test was scheduled. *Id.* at 79. The agency seems to agree. *Id.* at 18, 378.

appellant expressed concerns about her mother's caregiving needs and asked if she could take the drug test at a later hour, but her second-line supervisor told her that she needed to make arrangements for her mother's care. *Id.* at 328, 438. The appellant confirmed that she understood and that she would arrive at the office between 8:00 a.m. and 9:00 a.m. to take the random drug test. *Id.* at 291-92, 418-19.

According to the appellant, she tried to make arrangements for her mother's care, inquiring with the home healthcare agency as to whether it would be possible for a caregiver to arrive earlier than 8:00 a.m., but was not able to do so. *Id.* at 433-34. The next morning, the appellant, who indicated that she was unable to leave her mother and stepfather unmonitored, did not leave her mother's house until after the home healthcare worker arrived, which she estimated to be sometime after 8:00 a.m. *Id.* at 419, 422-23, 461-62. Consequently, the appellant had less than an hour to drive from her mother's house in Takoma Park, Maryland, to the DEA's office in Arlington, Virginia. *Id.* at 419, 422-23, 460-62. Without traffic, this drive is approximately 30 minutes; however, the appellant left at the height of rush hour in a metropolitan area with notoriously bad traffic.[4] *Id.* at 460-62. Further, the appellant described encountering "extreme" traffic during her commute and her Global Positioning System took her on an unfamiliar route, likely to avoid the traffic, further compounding her delay.[5] *Id.* at 420, 426-27. At 8:34 a.m., the appellant texted her first-line supervisor stating that she was "[s]tuck in traffic." *Id.* at 395. Approximately 10 minutes later, at 8:45 a.m., the appellant texted her second-line supervisor that she was not going to make the

---

[4] We take official notice that traffic in the Washington, D.C. metropolitan area, particularly between 8:00 a.m. and 9:00 a.m., is very heavy. *See* 5 C.F.R. § 1201.64 (stating that the Board may take official notice of matters of common knowledge or matters that can be verified).

[5] The appellant has indicated that she did not anticipate the amount of traffic she would encounter, since she was accustomed to commuting later in the day. IAF, Tab 5 at 79.

test, asked that he "not make a big deal of it," explaining "[w]hatever happens[,] happens," and thanking him for "all that [he had] done." *Id.* at 461-462.

At approximately 10:00 a.m. the appellant arrived at the office and went immediately to the health unit, but the individual performing the drug test had already departed. *Id.* at 425. She asked the employees at the health unit if she could go off-site to the contractor's office to take the drug test but was told that she could not do so. *Id.* at 80, 431-32. The appellant then went to her office and informed her first-line supervisor that she missed the test, stating words to the effect of "I guess I'm ready—I'm waiting to get escorted out because I didn't make the drug test."[6] *Id.* at 371. Then, when the appellant notified her second-line supervisor that she had missed the test, the appellant asked him, "are you going to escort me out of the office?" *Id.* at 292, 297, 427-28.

In accordance with agency protocol, the appellant was referred to the Office of Professional Responsibility (OPR) for investigation, and subsequently, the agency removed the appellant, effective July 18, 2023, based on a charge of failure to follow written or oral instructions for missing the September 20, 2022, drug test. *Id.* at 32, 42-43, 156-68, 218. The appellant filed a Board appeal, and after holding the requested hearing, the administrative judge issued an initial decision sustaining the agency's charge, finding nexus, and finding that removal was within the bounds of reasonableness. IAF, Tab 21, Initial Decision (ID) at 12-14, 22-28. The administrative judge also denied the appellant's affirmative defenses, finding that the appellant did not establish that her association with a disabled person was a factor in the agency's decision to remove her, nor did she establish that her removal violated the Family and Medical Leave Act (FMLA). ID at 14-22.

---

[6] Although the appellant did not confirm that she made this exact statement, she did confirm that she asked both her first- and second-line supervisor if she was going to be escorted out of the building because she missed the drug test. IAF, Tab 5 at 427-28.

The appellant filed a petition for review arguing, among other things, that the removal is too harsh considering the relevant mitigating factors. Petition for Review (PFR) File, Tab 1 at 10-14. The agency filed an untimely response to the petition for review, and, despite being afforded the opportunity to do so, did not show good cause for the filing delay.[7] PFR File, Tabs 3, 5. Accordingly, the appellant's motion to strike the agency's response is granted, and we have not considered the agency's response to the petition for review. PFR File, Tab 4.

## DISCUSSION OF ARGUMENTS ON REVIEW

On review, the appellant does not challenge the administrative judge's findings sustaining the agency's charge, her finding of nexus, or her finding denying her claim of disability discrimination.[8] ID at 12-19, 22. As the record supports the administrative judge's findings, we discern no reason to disturb them. *Crosby v. U.S. Postal Service*, 74 M.S.P.R. 98, 106 (1997) (finding that the Board will not disturb an administrative judge's findings when she considered the evidence as a whole, drew appropriate inferences, and made reasoned conclusions on issues of credibility); *Broughton v. Department of Health and Human Services*, 33 M.S.P.R. 357, 359 (1987) (same).

Accordingly, we focus on the heart of the appellant's challenge on review, specifically, the agency's penalty determination. PFR File, Tab 1 at 10-14. In assessing the reasonableness of the penalty, the Board will consider a

---

[7] The agency's response to the appellant's petition for review was due on August 13, 2024, but was not filed until August 15, 2024. PFR File, Tabs 2-3. The agency did not respond to the appellant's motion to strike the agency's response to the petition for review as untimely filed or the Board's notice regarding the timeliness of the response to the petition for review. PFR File, Tabs 4-5.

[8] On review, the appellant reiterates her argument that the agency interfered with her FMLA rights because it did not notify her of her rights under that statute. PFR File, Tab 1 at 13. The Board will adjudicate an FMLA claim only in connection with an otherwise appealable action related to leave. *Lua v. U.S. Postal Service*, 87 M.S.P.R. 647, ¶ 12 (2001). There is no evidence, nor does the appellant claim, that she requested leave of any kind on the day of the missed drug test. Accordingly, we need not further adjudicate the appellant's FMLA claim.

non-exhaustive list of factors set forth in *Douglas v. Veterans Administration*, 5 M.S.P.R. 280, 305-06 (1981). Those factors are: (1) The nature and seriousness of the offense, and its relation to the employee's duties, position, and responsibilities, including whether the offense was intentional or technical or inadvertent, or was committed maliciously or for gain, or was frequently repeated; (2) the employee's job level and type of employment, including supervisory or fiduciary role, contacts with the public, and prominence of the position; (3) the employee's past disciplinary record; (4) the employee's past work record, including length of service, performance on the job, ability to get along with fellow workers, and dependability; (5) the effect of the offense upon the employee's ability to perform at a satisfactory level and its effect upon supervisors' confidence in the employee's ability to perform assigned duties; (6) consistency of the penalty with those imposed upon other employees for the same or similar offenses; (7) consistency of the penalty with any applicable agency table of penalties; (8) the notoriety of the offense or its impact upon the reputation of the agency; (9) the clarity with which the employee was on notice of any rules that were violated in committing the offense, or had been warned about the conduct in question; (10) potential for the employee's rehabilitation; (11) mitigating circumstances surrounding the offense such as unusual job tensions, personality problems, mental impairment, harassment or bad faith, malice or provocation on the part of others involved in the matter; and (12) the adequacy and effectiveness of alternative sanctions to deter such conduct in the future by the employee or others. *Douglas*, 5 M.S.P.R. at 305-06; *see Thomas v. Department of the Army*, 2022 MSPB 35, ¶ 18.

When all of the agency's charges are sustained, as is the case here, the Board will review the agency penalty only to determine if the agency considered all of the relevant factors and exercised management discretion within the tolerable limits of reasonableness. *Thomas*, 2022 MSPB 35, ¶ 19. In making this determination, the Board must give due weight to the agency's primary discretion

in maintaining employee discipline and efficiency, recognizing that the Board's function is not to displace management's responsibility, but to ensure that managerial judgment has been properly exercised. *Id.* The Board will modify or mitigate an agency-imposed penalty only when it finds that the agency failed to weigh relevant factors or the penalty clearly exceeds the bounds of reasonableness. *Id.* For the reasons set forth below, we find that the deciding official did not consider relevant mitigating factors, and thus, the agency's penalty determination is not entitled to deference. Furthermore, we find that removal exceeds the tolerable bounds of reasonableness.

The deciding official did not consider evidence demonstrating that the appellant's conduct was unintentional and inadvertent.

It is well established that the most important factor in assessing whether the agency's chosen penalty is within the tolerable bounds of reasonableness is the nature and seriousness of the misconduct and its relation to the employee's duties, position, and responsibilities. *Id.*, ¶ 20. Here, the deciding official found the appellant's misconduct to be serious, characterizing it as "intentional and potentially malicious," citing to the fact that the appellant "jok[ed]" to her supervisors about being escorted from the building for missing the drug test. IAF, Tab 5 at 46-47. According to the deciding official, this joke evidenced a "complete disregard" for the importance of random drug testing and proved that the appellant took the situation lightly. *Id.* at 47; HR (testimony of the deciding official). The administrative judge, on the other hand, did not find that the appellant's misconduct was intentional or potentially malicious; instead, she found that the appellant acted negligently because she did not take appropriate steps to ensure a timely arrival. ID at 24-26. However, she also found that the appellant had presented herself in a manner that demonstrated that she was not overly concerned about missing the drug test and therefore concluded that the agency appropriately considered the appellant's behavior to be an aggravating factor. ID at 26-27.

We agree with the administrative judge's determination that the appellant's conduct was neither intentional nor malicious. However, to the extent that the administrative judge found that the agency was nevertheless warranted in finding her behavior to be an aggravating factor, we disagree. The record before us suggests that the appellant missed the random drug test due to circumstances that were largely beyond her control. It is not disputed that the appellant acts as a caregiver for her mother and stepfather, who suffer from medical conditions that require significant care, such that they cannot be left alone or unmonitored. IAF, Tab 5 at 78, 419; HR (testimony of the appellant). Therefore, when the appellant was unable to make alternative arrangements for a caregiver with less than a day's notice, it not apparent what option she had but to wait until the home healthcare worker arrived at her mother's house to depart, which was sometime after 8:00 a.m. IAF, Tab 5 at 419, 422-23, 461-62. Stated another way, the appellant had little control over the fact that she left her mother's house in Takoma Park, Maryland, at the height of rush hour in an area that has severe traffic and was unable to make the drug test.

Additionally, the circumstances preventing the appellant from making the drug test, i.e., her caregiving responsibilities, were well-known to the agency. For instance, her first-line supervisor informally allowed her telework at the start of her tour of duty to accommodate her caregiving responsibilities. *Id.* at 78; HR (testimony of the appellant, testimony of the appellant's first-line supervisor). Further, the appellant's second-line supervisor recognized that the appellant's attendance in the office was impacted by "issues" or "circumstances" related to her mother's care. IAF, Tab 5 at 288, 296-97, 299-300; HR (testimony of the appellant's second-line supervisor). In fact, during his call with the appellant the night prior to the drug test, the appellant's second-line supervisor told her to let him know if her mother had any issues and he would do "everything" he could do to help, including personally going to her mother's house. IAF, Tab 5 at 297. Yet, when the appellant expressed concerns about her mother's care and asked if

she could take the random drug test at a later hour, her second-line supervisor told her that she simply needed to make arrangements and did not offer an alternative solution. *Id.* at 296-97, 328.

In conclusion, we find that the appellant holds limited responsibility for missing the random drug test on September 20, 2022. Consequently, we are perplexed by the deciding official's characterization of the appellant's offense as "intentional and potentially malicious," a characterization that seems to be based on the belief that the appellant's "joke" about being escorted from the building evidenced a "complete disregard" of the agency and its mission. *Id.* at 47. On that point, we are not convinced that the appellant was, in fact, joking when she asked if she would be escorted from the building. Although her supervisors have stated that she made the comment in a joking manner, the appellant has consistently maintained that she made the comment out of nervousness and frustration. *Id.* at 80, 292-23, 371-73, 427-28, 432; HR (testimony of the appellant). In fact, even the appellant's first-line supervisor concedes that comment may have been the result of the appellant's nerves. IAF, Tab 5 at 371.

Nevertheless, as found by the administrative judge, it can be true that the appellant's supervisors believed that she was joking, and it can also be true that the appellant's behavior was rooted in her nervousness and anxiety. ID at 26. Regardless, even assuming that the appellant was joking, the weight of the evidence establishes that the appellant's misconduct was neither intentional nor malicious, and a single innocuous joke does not negate these findings. In other words, even if the appellant made an arguably inappropriate joke in the moment, it does not confer intent or maliciousness onto the appellant's offense. Therefore, we find that the appellant's offense was inadvertent and unintentional, and thus, the agency should have considered this to be a significant mitigating factor. *See McNeil v. Department of Justice*, 117 M.S.P.R. 533, ¶ 16 (2012) (finding that a "major mitigating factor" is the lack of intentional conduct).

<u>The deciding official knowingly and unjustifiably subjected the appellant to a disparate penalty.</u>

One month prior to the appellant's removal, the deciding official mitigated another employee's proposed removal to a 90-day suspension based on a charge of missing a random drug test, which the comparator missed because she did not have access to the car that she shared with her mother on the day of the drug test. IAF, Tab 5 at 503; HR (testimony of the deciding official). Conceding that he did not know why alternative transportation could not have been obtained, the deciding official nevertheless mitigated the comparator's proposed removal, testifying that she provided evidence that she communicated with her supervisors, showed remorse and accepted responsibility, and she took initiative by getting a drug test from a private clinic, even though it was not an acceptable alternative. HR (testimony of the deciding official). On the other hand, the deciding official claimed that the appellant only provided an undocumented excuse, which he did not find particularly credible, showed no remorse for missing the random drug test, and acted in manner which indicated she did not take the situation seriously. *Id.*

It is well settled that among the factors an agency should consider in setting the penalty for misconduct is consistency of the penalty with those imposed on other employees for the same or similar offenses. *Singh v. U.S. Postal Service*, 2022 MSPB 15, ¶ 10 (quotations omitted); *Douglas*, 5 M.S.P.R. at 305. In assessing an agency's penalty determination, the relevant inquiry is whether the agency knowingly and unjustifiably treated employees differently. *Singh*, 2022 MSPB 15, ¶ 14. The administrative judge concluded that the distinctions the deciding official drew between the appellant and the comparator were "not unreasonable." ID at 28. We disagree and find instead that the deciding official's articulated basis for imposing disparate penalties is contradicted by the record.

First, the appellant's excuse for missing the random drug test is supported by the record. Specifically, there is an abundance of evidence establishing that the agency knew that the appellant had caregiving responsibilities that would likely impede her ability to arrive at the office at the scheduled hour. IAF, Tab 5 at 78, 288, 296-97, 299-300; HR (testimony of the appellant, testimony of the appellant's second-line supervisor, testimony of the appellant's first-line supervisor). The appellant also provided contemporaneous text messages that she sent to her supervisors explaining that she was stuck in traffic and would miss the random drug test. IAF, Tab 5 at 395, 461-62. Therefore, we discern no basis for the deciding official to doubt the credibility of the appellant's explanation for missing the random drug test.

Next, contrary to the deciding official's testimony, the appellant has consistently taken accountability and expressed remorse for missing the random drug test. For instance, the appellant did not attempt to avoid reporting that she missed the random drug test, immediately informing her supervisory chain of the issue. *Id.* at 292-93, 370-71, 425-26. Additionally, during her OPR interview, the appellant confirmed that she knew the importance of random drug testing and showed remorse for missing the test, telling OPR investigators that she was embarrassed and that "this situation was all my fault." *Id.* at 418-19, 429-32, 438-39, 468. In fact, the appellant, without prompting, emailed OPR investigators after her interview to clarify her estimated time of departure, further demonstrating that she took the situation seriously. *Id.* at 460-63. Also, like the comparator, the appellant attempted to mitigate her offense by asking if she could go to the contractor's site to take a drug test but was told that she could not do so. *Id.* at 80, 431-32; HR (testimony of the appellant).

The deciding official's basis for subjecting the comparator and the appellant to disparate penalties is unpersuasive and not supported by the record. Therefore, we find that the deciding official knowingly and unjustifiably subjected the appellant to a disparate penalty.

We find mitigation to a 90-day suspension is warranted.

An agency's penalty determination is not entitled to deference if the deciding official failed to appropriately consider the relevant *Douglas* factors. *Chin v. Department of Defense*, 2022 MSPB 34, ¶ 24. Because, for the reasons set forth above, the agency deciding official erred in his consideration of two related factors—the appellant's lack of intent and the consistency of the penalty—the agency's penalty determination is not entitled to deference, and, accordingly, the Board must independently determine the penalty. *See Batara v. Department of the Navy*, 123 M.S.P.R. 278, ¶ 5 (2016) (explaining that the Board will independently weigh the relevant *Douglas* factors only if the deciding official failed to demonstrate that he considered the appropriate factors before deciding on a penalty).

Based on our review of the record, we find that removal is disproportionate to the offense. While we acknowledge that DEA has a specific and significant interest in enforcing drug laws and ensuring a drug-free workplace, we do not find that the appellant's misconduct rises to the level of seriousness assigned by the agency given that it was due to factors outside of her control. Additionally, the appellant's 34-years of service, excellent performance ratings, and lack of disciplinary record are significant mitigating factors. IAF, Tab 5 at 47-48; *see, e.g.*, *Von Muller v. Department of Energy*, 101 M.S.P.R. 91, ¶¶ 2, 23 (finding that the appellant's lack of prior discipline and over 21 years of service was a significant mitigating factor), *aff'd*, 204 F. App'x 17 (Fed. Cir. 2006); *Lloyd v. Department of the Army*, 99 M.S.P.R. 342, ¶ 14 (2005) (finding that 19 years of discipline-free service was a significant mitigating factor), *aff'd per curiam*, 180 F. App'x 911 (Fed. Cir. 2006). Accordingly, in line with the discipline issued by the agency to the identified comparator, we find that a 90-day suspension is the maximum penalty within the bounds of reasonableness.

**ORDER**

We ORDER the agency to cancel the removal action and substitute a 90-day suspension, effective July 18, 2023. *See Kerr v. National Endowment for the Arts*, 726 F.2d 730 (Fed. Cir. 1984). The agency must complete this action no later than 20 days after the date of this decision.

We also ORDER the agency to pay the appellant the correct amount of back pay, interest on back pay, and other benefits under the Back Pay Act and/or Postal Service regulations, as appropriate, no later than 60 calendar days after the date of this decision. We ORDER the appellant to cooperate in good faith in the agency's efforts to calculate the amount of back pay, interest, and benefits due, and to provide all necessary information the agency requests to help it carry out the Board's Order. If there is a dispute about the amount of back pay, interest due, and/or other benefits, we ORDER the agency to pay the appellant the undisputed amount no later than 60 calendar days after the date of this decision.

We further ORDER the agency to tell the appellant promptly in writing when it believes it has fully carried out the Board's Order and of the actions it has taken to carry out the Board's Order. The appellant, if not notified, should ask the agency about its progress. *See* 5 C.F.R. § 1201.181(b).

No later than 30 days after the agency tells the appellant that it has fully carried out the Board's Order, the appellant may file a petition for enforcement with the office that issued the initial decision on this appeal if the appellant believes that the agency did not fully carry out the Board's Order. The petition should contain specific reasons why the appellant believes that the agency has not fully carried out the Board's Order, and should include the dates and results of any communications with the agency. 5 C.F.R. § 1201.182(a).

For agencies whose payroll is administered by either the National Finance Center of the Department of Agriculture (NFC) or the Defense Finance and Accounting Service (DFAS), two lists of the information and documentation necessary to process payments and adjustments resulting from a Board decision

are attached. The agency is ORDERED to timely provide DFAS or NFC with all documentation necessary to process payments and adjustments resulting from the Board's decision in accordance with the attached lists so that payment can be made within the 60-day period set forth above.

## NOTICE TO THE APPELLANT REGARDING
## YOUR RIGHT TO REQUEST
## ATTORNEY FEES AND COSTS

You may be entitled to be paid by the agency for your reasonable attorney fees and costs. To be paid, you must meet the requirements set forth at Title 5 of the United States Code (5 U.S.C.), sections 7701(g), 1221(g), or 1214(g). The regulations may be found at 5 C.F.R. §§ 1201.201, 1201.202, and 1201.203. If you believe you meet these requirements, you must file a motion for attorney fees and costs WITHIN 60 CALENDAR DAYS OF THE DATE OF THIS DECISION. You must file your motion for attorney fees and costs with the office that issued the initial decision on your appeal.

## NOTICE OF APPEAL RIGHTS[9]

The initial decision, as supplemented by this Final Order, constitutes the Board's final decision in this matter. 5 C.F.R. § 1201.113. You may obtain review of this final decision. 5 U.S.C. § 7703(a)(1). By statute, the nature of your claims determines the time limit for seeking such review and the appropriate forum with which to file. 5 U.S.C. § 7703(b). Although we offer the following summary of available appeal rights, the Merit Systems Protection Board does not provide legal advice on which option is most appropriate for your situation and the rights described below do not represent a statement of how courts will rule regarding which cases fall within their jurisdiction. If you wish to seek review of this final decision, you should immediately review the law applicable to your

---

[9] Since the issuance of the initial decision in this matter, the Board may have updated the notice of review rights included in final decisions. As indicated in the notice, the Board cannot advise which option is most appropriate in any matter.

claims and carefully follow all filing time limits and requirements. Failure to file within the applicable time limit may result in the dismissal of your case by your chosen forum.

Please read carefully each of the three main possible choices of review below to decide which one applies to your particular case. If you have questions about whether a particular forum is the appropriate one to review your case, you should contact that forum for more information.

**(1) <u>Judicial review in general</u>**. As a general rule, an appellant seeking judicial review of a final Board order must file a petition for review with the U.S. Court of Appeals for the Federal Circuit, which must be <u>received</u> by the court within **60 calendar days** of <u>the date of issuance</u> of this decision. 5 U.S.C. § 7703(b)(1)(A).

If you submit a petition for review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

> U.S. Court of Appeals
> for the Federal Circuit
> 717 Madison Place, N.W.
> Washington, D.C. 20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

**(2) <u>Judicial or EEOC review of cases involving a claim of discrimination</u>**.  This option applies to you <u>only</u> if you have claimed that you were affected by an action that is appealable to the Board and that such action was based, in whole or in part, on unlawful discrimination.  If so, you may obtain judicial review of this decision—<u>including a disposition of your discrimination claims</u>—by filing a civil action with an appropriate U.S. district court (*not* the U.S. Court of Appeals for the Federal Circuit), within **30 calendar days** <u>after you receive</u> this decision.  5 U.S.C. § 7703(b)(2); *see Perry v. Merit Systems Protection Board*, 582 U.S. 420 (2017).  If you have a representative in this case, and your representative receives this decision before you do, then you must file with the district court no later than **30 calendar days** <u>after your representative</u> <u>receives</u> this decision.  If the action involves a claim of discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security.  *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.

Contact information for U.S. district courts can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

Alternatively, you may request review by the Equal Employment Opportunity Commission (EEOC) of <u>your discrimination claims only, excluding all other issues</u>.  5 U.S.C. § 7702(b)(1).  You must file any such request with the EEOC's Office of Federal Operations within **30 calendar days** <u>after you receive</u> this decision.  5 U.S.C. § 7702(b)(1).  If you have a representative in this case, and your representative receives this decision before you do, then you must file with the EEOC no later than **30 calendar days** <u>after your representative receives</u> this decision.

If you submit a request for review to the EEOC by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C. 20013

If you submit a request for review to the EEOC via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, N.E.
Suite 5SW12G
Washington, D.C. 20507

**(3) Judicial review pursuant to the Whistleblower Protection Enhancement Act of 2012**. This option applies to you only if you have raised claims of reprisal for whistleblowing disclosures under 5 U.S.C. § 2302(b)(8) or other protected activities listed in 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D). If so, and your judicial petition for review "raises no challenge to the Board's disposition of allegations of a prohibited personnel practice described in section 2302(b) other than practices described in section 2302(b)(8), or 2302(b)(9)(A)(i), (B), (C), or (D)," then you may file a petition for judicial review either with the U.S. Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction.[10] The court of appeals must receive your petition for review within **60 days** of the date of issuance of this decision. 5 U.S.C. § 7703(b)(1)(B).

---

[10] The original statutory provision that provided for judicial review of certain whistleblower claims by any court of appeals of competent jurisdiction expired on December 27, 2017. The All Circuit Review Act, signed into law by the President on July 7, 2018, permanently allows appellants to file petitions for judicial review of MSPB decisions in certain whistleblower reprisal cases with the U.S. Court of Appeals for the Federal Circuit or any other circuit court of appeals of competent jurisdiction. The All Circuit Review Act is retroactive to November 26, 2017. Pub. L. No. 115-195, 132 Stat. 1510.

If you submit a petition for judicial review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C.  20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit.  The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

Contact information for the courts of appeals can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

FOR THE BOARD:            _____
                          Gina K. Grippando
                          Clerk of the Board

Washington, D.C.

**DEFENSE FINANCE AND ACCOUNTING SERVICE**
**Civilian Pay Operations**

# DFAS BACK PAY CHECKLIST

The following documentation is required by DFAS Civilian Pay to compute and pay back pay pursuant to 5 CFR § 550.805.  Human resources/local payroll offices should use the following checklist to ensure a request for payment of back pay is complete.  Missing documentation may substantially delay the processing of a back pay award.  **More information may be found at: https://wss.apan.org/public/DFASPayroll/Back%20Pay%20Process/Forms/AllItems.aspx.**

**NOTE:  Attorneys' fees or other non-wage payments (such as damages) are paid by vendor pay, not DFAS Civilian Pay.**

☐  1) Submit a **"SETTLEMENT INQUIRY - Submission"** Remedy Ticket.  Please identify the specific dates of the back pay period within the ticket comments.

Attach the following documentation to the Remedy Ticket, or provide a statement in the ticket comments as to why the documentation is not applicable:

☐  2) Settlement agreement, administrative determination, arbitrator award, or order.

☐  3) Signed and completed "Employee Statement Relative to Back Pay".

☐  4) All required SF50s (new, corrected, or canceled).  **\*\*\*Do not process online SF50s until notified to do so by DFAS Civilian Pay.\*\*\***

☐  5) Certified timecards/corrected timecards.  **\*\*\*Do not process online timecards until notified to do so by DFAS Civilian Pay.\*\*\***

☐  6) All relevant benefit election forms (e.g. TSP, FEHB, etc.).

☐  7) Outside earnings documentation.  Include record of all amounts earned by the employee in a job undertaken during the back pay period to replace federal employment.  Documentation includes W-2 or 1099 statements, payroll documents/records, etc.  Also, include record of any unemployment earning statements, workers' compensation, CSRS/FERS retirement annuity payments, refunds of CSRS/FERS employee premiums, or severance pay received by the employee upon separation.

**Lump Sum Leave Payment Debts:**  When a separation is later reversed, there is no authority under 5 U.S.C. § 5551 for the reinstated employee to keep the lump sum annual leave payment they may have received.  The payroll office must collect the debt from the back pay award.  The annual leave will be restored to the employee.  Annual leave that exceeds the annual leave ceiling will be restored to a separate leave account pursuant to 5 CFR § 550.805(g).

**NATIONAL FINANCE CENTER CHECKLIST FOR BACK PAY CASES**

Below is the information/documentation required by National Finance Center to process payments/adjustments agreed on in Back Pay Cases (settlements, restorations) or as ordered by the Merit Systems Protection Board, EEOC, and courts**.**

1. Initiate and submit AD-343 (Payroll/Action Request) with clear and concise information describing what to do in accordance with decision.

2. The following information must be included on AD-343 for Restoration:

    a. Employee name and social security number.
    b. Detailed explanation of request.
    c. Valid agency accounting.
    d. Authorized signature (Table 63).
    e. If interest is to be included.
    f. Check mailing address.
    g. Indicate if case is prior to conversion.  Computations must be attached.
    h. Indicate the amount of Severance and Lump Sum Annual Leave Payment to be collected (if applicable).

Attachments to AD-343

1. Provide pay entitlement to include Overtime, Night Differential, Shift Premium, Sunday Premium, etc. with number of hours and dates for each entitlement (if applicable).
2. Copies of SF-50s (Personnel Actions) or list of salary adjustments/changes and amounts.
3. Outside earnings documentation statement from agency.
4. If employee received retirement annuity or unemployment, provide amount and address to return monies.
5. Provide forms for FEGLI, FEHBA, or TSP deductions. (if applicable)
6. If employee was unable to work during any or part of the period involved, certification of the type of leave to be charged and number of hours.
7. If employee retires at end of Restoration Period, provide hours of Lump Sum Annual Leave to be paid.

NOTE:  If prior to conversion, agency must attach Computation Worksheet by Pay Period and required data in 1-7 above.

The following information must be included on AD-343 for Settlement Cases:  (Lump Sum Payment, Correction to Promotion, Wage Grade Increase, FLSA, etc.)

    a. Must provide same data as in 2, a-g above.
    b. Prior to conversion computation must be provided.
    c. Lump Sum amount of Settlement, and if taxable or non-taxable.

If you have any questions or require clarification on the above, please contact NFC's Payroll/Personnel Operations at 504-255-4630.